B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS Patrick J. Bartels, Jr.; Edgar C. Gentle, III, Ad Hoc 1st Lien Creditor Group, Roger Frankel, Arik Preis, Matthew J. Malletta |
|---|---|
| Charles Elliott Anderson Jr. | |

| ATTORNEYS (Firm Name, Address, and Telephone No.) Charles Elliott Anderson, JR. Pro se 1305 California Ave, # 3 Las Cruces, NM 88001 | ATTORNEYS (If Known) ① Seward & Kissel One Battery Park Plaza New York, NY 10604  ② Cross & Simon LLC, 1105 N. Market Street Wilmington, DE 19901 |
|---|---|

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☒ Creditor ☐ Other ☐ Trustee | ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☒ Other |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

28 U.S.C. §§ 1334, 157; Fed. R. Civ. P. 60(d)(3) - Fraud on Court. Action to vacate Confirmation Order due to extrinsic Fraud & Concealment of $21.8 Billion in Assets, Breach of 4x Multiplier inducement, Purdue Releases - Non Consenting releases, 4 Billion Asset gap from SEC Filing & Bankruptcy Petition.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1. first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☒ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- ☒ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- ☒ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ 25,000,000.⁰⁰ (25 million dollars) |

Other Relief Sought  Vacate ECF 295-(22-22608); Full Forensic Audit of 21.8 Billion Solvent Luxembourg Shell subsidiary, and 4 Billion Asset gap in day 1 Filing, Triplicate transfers of $500 million dollars to Hawk Acq. Island.

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR  (F.K.A ENDO International plc)<br>Branded Operations Holdings Inc, | BANKRUPTCY CASE NO.<br>22-22608 - (JLG) - (295) | |
| DISTRICT IN WHICH CASE IS PENDING<br>Southern District Of New York | DIVISION OFFICE<br>Manhattan | NAME OF JUDGE<br>Hon. James L. Garrity Jr. |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>1·21·2026 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Charles Elliott Anderson Jr. Pro Se | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Charles Elliott Anderson, Jr.
1205 California Ave. #2
Las Cruces, NM 88001
575-300-3833
thankyoulord2019@gmail.com


UNITED STATES BANKRUPTCY COURT


SOUTHERN DISTRICT OF NEW YORK
_____

In re:
BRANDED OPERATIONS HOLDINGS, INC., et al.,

(Formerly ENDO INTERNATIONAL plc)
Debtors.

Charles Elliott Anderson, Jr.,
Plaintiff,
**v.**
Patrick J. Bartels, Jr.; Edgar C. Gentle, III; Ad Hoc First Lien Creditor Group (Golden Tree/Silver Point); Roger Frankel; Arik Preis; Matthew J. Maletta,
Defendants.
Case No. 22-22549 (JLG)
(Jointly Administered)

_____


Adversary Proceeding No. _____


VERIFIED OMNIBUS MASTER ADVERSARY COMPLAINT TO VACATE CONFIRMATION ORDER [ECF NO. 3960] AND CLOSING ORDER [ECF NO. 276] FOR SYSTEMIC FRAUD ON THE COURT (RULE 60(d)(3)), BAD FAITH VENUE SHOPPING, EXTRINSIC FRAUD, AND BREACH OF CONTRACT


I. PRELIMINARY STATEMENT:


THE "PROJECT SENTINEL" INDICTMENT

This Master Complaint serves as a formal prosecutorial indictment of the Chapter 11 proceedings of Endo International plc. Plaintiff, a disabled creditor with a $5,000,000.00 "Deemed Allowed" property right, presents incontrovertible forensic evidence that the Confirmation Order [ECF No. 3960] and Subsequent Closing Order [ECF No. 276] are void ab initio.

These proceedings were a coordinated, multi-year scheme of Extrinsic Fraud (fraus in curiam) designed to orchestrate the theft of over $10 Billion in enterprise value. This scheme, identified as "Project Sentinel," utilized the "Malvern Nest" command center to launder assets through a global web of 76 shell entities.

The scheme intentionally devalued opioid victims through a fraudulent 4x Multiplier ($25,000,000.00) inducement while insiders enriched themselves through undisclosed interlocking directorates, lucrative board seats, and luxury acquisitions, including an $8.9 Million private jet.

II. THE FORENSIC TIMELINE OF THE "WIZARD OF OZ" ASSET GAP

August 11, 2022: Endo International plc filed its sworn 10-Q with the SEC reporting total consolidated assets of $10,233,000,000.00.

August 15, 2022 (The 24-Hour Siphon): Under the direction of Defendant Matthew J. Maletta (CLO), the Debtors authorized three separate transfers of $500 Million each ($1.5 Billion total) and a supplemental $750 Million tranche to Hawk Acquisition Ireland Limited (Case No. 22-22611).

[Evidence: Doc 4401, Pg. 52].

August 16, 2022 (Petition Date): The "Perjury Carpet Bombing" begins with 76 petitions.

The main petition (ECF No. 1) reports assets of only $6.23 Billion. $4,003,000,000.00 vanished in five days between the SEC and the Court.

December 31, 2022: Debtors officially reported a Cumulative Profit/Loss of ($13,682,878,588.00) in Doc 4401, Page 2, Part 4, Item k. This manufactured impairment was

used to declare the estate "insolvent" while the operational enterprise remained solvent offshore.

## III. JURISDICTION: THE "DELAWARE" VENUE TRAP & PURDUE CLONE

Bad Faith Venue Selection: The majority of the 76 debtor entities are incorporated under the laws of Delaware. Debtors bypassed the proper legal home—the District of Delaware—to engage in "Bankruptcy Tourism" in the SDNY to avoid Delaware's strict solvency scrutiny and shield the $21.8 Billion Luxembourg solvency.

Purdue Clone Releases: The Plan utilizes "Non-Consensual Third-Party Releases" (Exhibit I) that are textually identical to those struck down in Harrington v. Purdue Pharma L.P. (2024). Under this precedent, the Court lacked subject matter jurisdiction to grant these releases. Plaintiff's Rejected Ballot (Voter ID: 5279827) explicitly denied consent, yet his claims were illegally discharged.

## IV. MASTER NARRATIVE ARTICLES OF FRAUD

### ARTICLE I: THE MATTHEW MALETTA "HAWK" ARCHITECTURE & PRE-PETITION DRAIN

A. THE ISSUE: Did Matthew Maletta intentionally exclude the $8.05 Billion Par Pharmaceutical value from the estate using a pre-petition Special Purpose Vehicle (SPV)?

B. THE ARGUMENT: In 2015, Matthew J. Maletta authorized the Par buyout for $8.05 Billion using Hawk Acquisition Ireland. During bankruptcy, he represented this as a valueless "doormat shell." In reality, he moved $2.25 Billion in liquid capital to this shell on August 15, 2022, to place it beyond the reach of the Court's jurisdiction and the victims.

C. THE EVIDENCE: 2015 Merger Agreement (Pg 107); ECF No. 1502, Pg 509; MOR Doc 4401.

D. LAWS BROKEN: 18 U.S.C. § 152 (Concealment of Assets); 11 U.S.C. § 548 (Fraudulent Transfer).

E. LEGAL SIGNIFICANCE:

Concealment of the primary revenue driver renders the "Insolvency" finding void.

ARTICLE II: THE PATRICK BARTELS "WIZARD" CONFLICT & THE $8.9M JET QUID PRO QUO

A. THE ISSUE: Did Patrick Bartels utilize undisclosed interlocking directorates to facilitate a Quid Pro Quo asset wash and personal luxury enrichment?

B. THE ARGUMENT: While acting as Plan Administrator, Bartels simultaneously accepted board seats at Millrose Properties (a $47B platform) and GISI/Hill International, entities managed by the Buyer group (Kennedy Lewis/Golden Tree). Bartels orchestrated the "Mootness Trap" to close the Endo case, and in return, he was seated on buyer boards (EX-99.2) and acquired an $8.9 Million private jet via the "WTC-JET" platform.

C. THE EVIDENCE: SEC EX-99.2 (Bartels Consent 12/18/24); Millrose 10-K; FAA N-Number records; ECF No. 276.

D. LAWS BROKEN: 18 U.S.C. § 152(6) (Bribery/Fee Fixing); Clayton Act § 8 (Interlocking Directorates).

E. LEGAL SIGNIFICANCE:

A fiduciary cannot be "disinterested" while receiving board fees and luxury assets from the Buyer.

ARTICLE III: THE DISQUALIFYING FIDUCIARY CONFLICTS OF ARIK PREIS & ROGER FRANKEL

A. THE ISSUE: Did the court-appointed "watchdogs" work for the predators prior to the bankruptcy filing?

B. THE ARGUMENT: Roger Frankel (FCR) was engaged by the Ad Hoc First Lien Creditors (the Buyers) prior to the bankruptcy filing, making him an agent for the lenders. Arik Preis (OCC

Counsel) swore in ECF 605 he was "not adverse" to Golden Tree, the buyer. They suppressed the 36-State AG fraud evidence (the $450M settlement decoy) to ensure the RSA was rubber-stamped.

C. THE EVIDENCE: ECF No. 986 (Frankel Declaration); ECF No. 605 (Preis Declaration); ECF No. 4335 (AG Settlement Decoy).

D. LAWS BROKEN: 11 U.S.C. § 327 (Conflict of Interest); 18 U.S.C. § 157 (Bankruptcy Fraud).

ARTICLE IV: THE "STAUBUS" PATTERN OF RECYCLED FRAUD & OPERAND GAMBIT

A. THE ISSUE: Does the Board have a documented history of discovery destruction and asset concealment?

B. THE ARGUMENT: The Endo Board (Maletta, Coleman, Bradley) was previously sanctioned in the Tennessee Staubus Case for "willful" destruction of evidence. They recycled this playbook in the SDNY by executing the "Operand Gambit"—hiding high-value shells for nine months post-petition to prevent victims from discovering IP value.

C. THE EVIDENCE: Tennessee Default Judgment (Staubus v. Purdue/Endo); ECF Nos. 2729, 23-22414.

D. LAWS BROKEN: 18 U.S.C. § 1512 (Obstruction of Justice).

ARTICLE V: THE "GHOST SHIP" PERJURY & WORKERS' COMPENSATION CONTRADICTION

A. THE ISSUE: Did the Debtors lie about their operational status to manufacture insolvency?

B. THE ARGUMENT: Doc 410 and Doc 4394 report 0 Employees for the U.S. estate. However, Endo Ventures Unlimited (Case No. 22-22550) reported 80 Full-Time Employees [Doc 3143]. Furthermore, they certified "Yes" for Workers' Compensation policies for shells with zero employees—a legal impossibility proving systemic perjury.

C. THE EVIDENCE: Doc 410; Doc 3143; MOR for period ending 03/31/24.


D. LAWS BROKEN: 18 U.S.C. § 1621 (Perjury).


V. THE "RODRIGUEZ TRAP" & ADMINISTRATIVE SPOLIATION


Between Nov 12-14, 2025, Plaintiff engaged in a 17-minute whistleblower disclosure with the Clerk for Honorable Judge James L. Garrity Jr.- "Ms. Rodriguez" - regarding the hidden $2.25 Billion Hawk transfers.


Immediately following, the Court entered the Order Closing Cases [ECF 276] on Nov 19, 2025. This was a retaliatory act to moot Plaintiff's findings.


The Clerk then docketed Plaintiff's adversarial motion [ECF 277] under the false label "Motion to Approve" and scanned it upside-down to hide Exhibits F-2 and F-4 (clinical proof of injury/death).


VI. PRAYER FOR RELIEF

Plaintiff demands a trial by jury and seeks:


VACATE the Confirmation Order [ECF 3960] and Closing Order [ECF 276] for Fraud on the Court;


APPOINT an Independent Forensic Examiner to audit the $21.8 Billion Luxembourg Solvency, and $4 Billion asset withholding.


JUDGMENT in the amount of $25,000,000.00 for Breach of Contract/Inducement;


DISGORGE all professional fees ($285M+) paid to Patrick Bartels, Skadden Arps and Akin Gump for undisclosed conflicts;

SANCTION the Defendants per the Tennessee Staubus precedent for "Recycled Fraud."

Respectfully Submitted: January 21, 2026

*Charles Elliott Anderson, Jr.*

VERIFICATION

I, Charles Elliott Anderson, Jr., Plaintiff, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*Charles Elliott Anderson, Jr.*

CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2026, I served the foregoing Master Adversary Complaint via first-class mail and electronic mail to:

Patrick J. Bartels, Jr., pbartels@redanadvisory.com, 5330 Carmel Crest Ln, Charlotte, NC 28226.

Arik Preis, apreis@akingump.com, One Bryant Park, New York, NY 10036.

Matthew J. Maletta, Endo International, 1400 Atwater Dr, Malvern, PA 19355.

Edgar C. Gentle, III, csimon@crosslaw.com, 1105 N. Market St, Wilmington, DE 19801.

Brian P. Maloney, maloney@sewkis.com, One Battery Park Plaza, New York, NY 10004.

*Charles Elliott Anderson, Jr.*

"Exhibit I" - From Bankruptcy upload.

* Attached Is Ballot w/ *
Recycled Release / Jurisdiction

75795-25

*Received 2/15/24*

*Submitted E Ballot*
*Tues - 2/20/24*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In re*

**ENDO INTERNATIONAL plc, *et al.*,**

**Debtors.**[1]

**Chapter 11**

**Case No. 22-22549 (JLG)**

**(Jointly Administered)**

*\* UNCONSTITUTIONAL*

**JOINT (I) BALLOT FOR VOTING TO ACCEPT OR REJECT THE SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF ENDO
INTERNATIONAL PLC AND ITS AFFILIATED DEBTORS AND (II) PROXY FOR
VOTING ON SCHEME OF ARRANGEMENT OF ENDO INTERNATIONAL PLC**

**CLASS 7(A) – PI OPIOID CLAIMS**

> **IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING
> INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE EMAIL THE
> SOLICITATION AGENT AT ENDOINFO@RA.KROLL.COM (WITH "ENDO
> SOLICITATION INQUIRY" IN THE SUBJECT LINE) OR CALL THE
> SOLICITATION AGENT AT: (877) 542-1878 (U.S. / CANADA, TOLL-FREE);
> +1 (929) 284-1688 (INTERNATIONAL, TOLL). YOU MAY ALSO CONTACT THE
> OPIOID CLAIMANTS' COMMITTEE WITH ANY QUESTIONS AT
> ENDOCREDITORINFO@AKINGUMP.COM.**
>
> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY
> <u>BEFORE</u> COMPLETING THIS BALLOT. THIS BALLOT IS BEING SENT TO YOU
> TO SOLICIT YOUR (I) VOTE ON THE DEBTORS' PLAN OF REORGANIZATION
> AND APPOINT A SPECIAL PROXY TO VOTE ON THE SCHEME OF
> ARRANGEMENT AND (II) ELECTION WITH <u>RESPECT TO CERTAIN RELEASES</u>
> CONTAINED IN ARTICLE X OF THE DEBTORS' PLAN OF REORGANIZATION.** *\**
>
> **IF YOU ARE A HOLDER OF AN ALLOWED CLASS 7(A) PI OPIOID CLAIM, PLEASE
> COMPLETE, EXECUTE, AND RETURN THIS BALLOT SO THAT IT IS <u>ACTUALLY
> RECEIVED</u> BY KROLL RESTRUCTURING ADMINISTRATION LLC
> (THE "SOLICITATION AGENT" OR "KROLL") BY OR BEFORE 4:00 P.M.
> (PREVAILING EASTERN TIME) ON FEBRUARY 22, 2024 (THE "VOTING**

*\*\* (Page \* 65)*

---

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Dr, Malvern PA 19355.

*\*\* (EXHIBIT-(I): Rejected Ballot & Unconstitutional Releases) \*\**

Voter ID: 5279827

222254902186333

> **DEADLINE").** DO NOT RETURN THIS BALLOT TO THE DEBTORS.
>
> **IF THE DEBTORS' PLAN OF REORGANIZATION IS CONFIRMED BY THE BANKRUPTCY COURT AND THE DEBTORS' SCHEME OF ARRANGEMENT IS SANCTIONED BY THE HIGH COURT OF IRELAND, BOTH WILL BE BINDING ON YOU WHETHER OR NOT YOU HAVE VOTED TO ACCEPT OR REJECT EITHER ONE. IF YOU DO NOT MAKE THE PROPER ELECTION WITH RESPECT TO CERTAIN RELEASES CONTAINED IN ARTICLE X OF THE DEBTORS' PLAN OF REORGANIZATION, THE RELEASES WILL BE BINDING ON YOU.**
>
> **NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS ENCLOSED WITH THIS BALLOT.**

—— Endo International plc ("Endo Parent") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") are soliciting votes to accept or reject the *Second Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and Its Affiliated Debtors*, dated January 9, 2024 [Docket No. 3535] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan")[2] as set forth in the *Disclosure Statement with Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors*, dated January 16, 2024 [Docket No. 3554] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Bankruptcy Court has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on January 12, 2024 [Docket No. 3549] (the "Disclosure Statement Order"). Entry of the Disclosure Statement Order does not indicate approval of the Disclosure Statement on a final basis or confirmation of the Plan by the Bankruptcy Court.

Endo Parent is concurrently proposing a "scheme of arrangement" under Part 9 of the Irish Companies Act 2___ e__ cheme") which ___ plement certain terms of the Plan in Ireland and affects your rights. The High Court of Ireland (the "Irish High Court") has approved a Scheme Circular (the "Scheme Circular") describing the terms of the Scheme, including who it applies to, how it interacts with the Plan, and how to vote to approve or reject the Scheme. Votes in respect of the Scheme will be cast at the Scheme Meetings, which will be held on March 7, 2024, as set out in the Scheme Circular and the Notices of the Scheme Meetings.

You are receiving this Ballot because our records indicate that you are, as of the Voting Record Date (close of business on January 2, 2024), a holder of a Class 7(A) PI Opioid Claim against the Debtors. Accordingly, you have the right to (i) vote to accept or reject the Plan, (ii) vote at the relevant Scheme Meeting (in person or by proxy) to accept or reject the Scheme, and (iii) if applicable, make an election (the "Release Election") regarding the Non-GUC Releases

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan, Disclosure Statement, Disclosure Statement Order, Scheme Circular (each as defined herein), or the Solicitation and Voting Procedures (as defined in the Disclosure Statement Order), as applicable.

EXHIBIT-(I-1): Rejected Ballot (Unconstitutional Releases).   (Page 66)

Voter ID: 5279827

222254902186333

contained in Section 10.3 of the Plan (the "Releases") as provided in Item 2 below on account of your Class 7(A) PI Opioid Claim. You may submit a vote in respect of the Plan, submit a proxy in respect of the Scheme, and make your Release Election as provided at Item 2 below.

You are only required to vote once in respect of the Plan and the Scheme, and you may use this Ballot to submit both a vote in respect of the Plan and a proxy in respect of the Scheme.

For the purpose of the Scheme, the Voting Record Date for General Unsecured Scheme Creditors will be February 22, 2024 (the Voting Deadline under the Plan) (the "General Unsecured Scheme Voting Record Date"). As indicated above, you have received this Ballot and the accompanying Solicitation Package because our records indicate that you are, as of the Voting Record Date under the Plan, a holder of a Class 7(A) PI Opioid Claim and therefore are a General Unsecured Scheme Creditor. If you transfer or assign your Claim between the Voting Record Date and the General Unsecured Scheme Voting Record Date, you will not be entitled to attend or vote at the General Scheme Creditors' Meeting. You will remain entitled to vote on the Plan if you are a holder of a Class 7(A) PI Opioid Claim as of the Voting Record Date under the Plan. You should submit your vote in respect of the Plan in accordance with the Solicitation and Voting Procedures, but any vote in relation to the Scheme will not be counted for purposes of the Scheme to the extent there has been a valid transfer or assignment of the applicable Claim prior to the General Unsecured Scheme Voting Record Date.

The transferee or assignee of a relevant Claim transferred or assigned after the Voting Record Date, but prior to the General Unsecured Scheme Voting Record Date, will be entitled to vote on the Scheme at the General Scheme Creditors' Meeting, and to receive any distribution or consideration in respect of that relevant Claim. In order to do so, the transferee or assignee should contact the Solicitation Agent at endoballots@ra.kroll.com to request and obtain a Scheme Voting Form.

\* \*/EXHIBIT-(I-2): Rejected Ballot & Unconstitutional Releases) \*\*\(Page \#67)\*\*

3

*(handwritten left margin, vertical):* UNCONSTITUTIONAL COERCED ECONOMICALLY

## IMPORTANT NOTICE REGARDING TREATMENT FOR CLASS 7(A)

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, each holder of an Allowed Class 7(A) PI Opioid Claim shall receive the following treatment:  *(handwritten: ? FRAUD)*

Except to the extent that a holder of a PI Opioid Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, settlement, release, and discharge of, and in exchange for the PI Opioid Claims, (i) the PI Trust shall receive the PI Trust Share in accordance with the PI Trust Documents; and (ii) each PI Opioid Claim shall automatically, and without further act, deed, or court order, be channeled exclusively to the PPOC Trust pursuant to Section 10.9 of the Plan and subsequently channeled to the PI Trust, and all of the Debtors' liability for such Claim shall be assumed by the PI Trust and such PI Opioid Claim shall be Allowed, Disallowed and released in full, or otherwise resolved, in each case, in accordance with the PI Trust Documents. Holders of Allowed PI Opioid Claims shall receive a recovery, if any, from the PI Trust Share, in each case, in accordance with and subject to the terms of the PI Trust Documents.

*Incremental Trust Distributions in Exchange for Granting Non-GUC Releases.* The procedures governing Distributions set forth in the PI Trust Documents shall provide for an additional payment by the PI Trust to any holder of an Allowed PI Opioid Claim who is entitled to receive a Distribution from the PI Trust and who grants or is deemed to grant, as applicable, the Non-GUC Releases. Such additional payment from the PI Trust shall be in exchange for such holder granting or being deemed to grant, as applicable, the Non-GUC Releases and shall be calculated by multiplying (i) the amount of any Distribution to be made to such holder pursuant to the PI Trust Documents, by (ii) a multiplier of 4x.

**PLEASE SEE <u>EXHIBIT A</u> FOR IMPORTANT INFORMATION REGARDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN.**

If you are the holder of a Class 7(A) PI Opioid Claim (and are entitled to vote) as of the Voting Record Date, please use this Ballot to (i) cast your vote to (a) accept or reject the Plan, and (b) appoint the Chairperson of the Scheme Meetings as a special proxy to submit an equivalent vote on your behalf to accept or reject the Scheme, and (ii) if applicable, make your Release Election. This Ballot may not be used for any other purpose. If you (i) wish to submit a proxy to vote on the Scheme differently to the vote you are submitting in relation to the Plan, (ii) wish to vote on the Plan but do not wish to vote on the Scheme, (iii) wish to appoint someone other than the Chairperson as your proxy for the purpose of the relevant Scheme Meeting, or (iv) wish to attend the relevant Scheme Meeting and vote in person, you must obtain a Scheme Voting Form from the Solicitation Agent by emailing endoballots@ra.kroll.com with a reference to "Endo Scheme Voting Form" in the subject line.

*(handwritten): \*\*(Page # 68)\*\**

*(handwritten): \*\*(EXHIBIT-(I-3): Rejected Ballot & "Unconstitutional Releases")\*\**

4

Voter ID: 5279827



222254902186333

If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot or any information thereon is incorrect, please contact the Solicitation Agent immediately at the address or telephone number set forth below.

*[handwritten: FRAUD OCC JOINDER ECF 604 & 605]*

Your rights are described in the Disclosure Statement and Scheme Circular, which, along with the Plan, Scheme, Disclosure Statement Order, a letter from the Opioid Claimants' Committee (the "OCC Letter"), and certain other materials, can be accessed electronically using the instructions provided in the Solicitation Package you are receiving with this Ballot. If you need to obtain additional solicitation materials, you may contact the Debtors' Solicitation Agent, Kroll Restructuring Administration, LLC, by: (a) calling the Solicitation Agent at (877) 542-1878 (U.S. / Canada, toll-free) or +1 (929) 284-1688 (International, toll); (b) visiting the Debtors' case website at https://restructuring.ra.kroll.com/Endo (the "Case Website") and contacting the Solicitation Agent via the "Live Chat" feature at the "Info Center" panel of the landing page; (c) contacting the Solicitation Agent by mail at Endo Ballot Processing Center, c/o Kroll Restructuring Administration, LLC, 850 Third Avenue, Suite 412, Brooklyn, NY 11232; or (d) emailing endoinfo@ra.kroll.com with "Solicitation Package request" in the subject line. You may also access these materials for a fee via PACER at https://www.nysb.uscourts.gov/.

You should review the Disclosure Statement, the Scheme Circular, the Scheme, the Plan, and the OCC Letter before you vote. You may wish to seek legal advice concerning the Plan, the Scheme, and the classification and treatment of your Claim. Your Claim has been placed in Class 7(A) (PI Opioid Claims) under the Plan. You must use only this Ballot for all the Class 7(A) PI Opioid Claims you wish to vote, and you must vote either (i) to accept the Plan and the Scheme as to all such Claims or (ii) to reject the Plan and the Scheme as to all such Claims. Except as set forth in the immediately preceding sentence, if you hold Claims in more than one Class, you will receive a Ballot for each Class in which you are entitled to vote.

The Bankruptcy Court can confirm the Plan and bind you if the Plan is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each Impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, each Class rejecting the Plan, (b) provides that at least one Impaired Class accepts the Plan without including the votes of insiders in accordance with section 1129(a)(10) of the Bankruptcy Code, and (c) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote or affirmatively vote to reject the Plan. If you opt out of granting the Releases, the Releases will not be binding on you.

The Irish High Court can sanction the Scheme if the Scheme is approved by Scheme Creditors representing at least 75% by value and a majority in number of those voting (either in person or by proxy) at each Scheme Meeting. If the Scheme is sanctioned by the Irish High Court, it will be binding on all Scheme Creditors whether or not they vote or affirmatively vote to reject the Scheme.

To have your vote counted, you must complete, sign, and return this Ballot so that it is actually received by the Solicitation Agent by or before the Voting Deadline.

*[handwritten: **(EXHIBIT-(I-4): "Rejected Ballot & Unconstitutional Releases")** **(Page #69)**]*

Voter ID: 5279827

222254902186333

### ITEM 1.  Amount of Claim.

The undersigned hereby certifies that as of the Voting Record Date (close of business on January 2, 2024), the undersigned was the holder of Class 7(A) PI Opioid Claims against the Debtors in the following aggregate unpaid principal amount.  **Please note that, except as otherwise set forth in the Disclosure Statement Order, for purposes of tabulating your vote on the Plan, *regardless of the amount set forth below*, each Claim in Class 7(A) will be allowed and tabulated in the amount of $1.00 on a non-priority, unsecured basis for voting purposes only, and not for distribution, allowance, or any other purpose.**

$1.00

*[handwritten: My Records Have Been sent from Hospital in, my claim has been Reduced on the website]*

For purposes of voting on the Scheme, you may be requested to provide additional supporting documents to substantiate the value of your Claim for voting purposes.  If the Chairperson is not satisfied that the documents provided support your Claim, the Chairperson may exercise its discretion to (i) admit your Claim for an alternative amount which appears to be supported by the evidence provided, (ii) admit the Claim for $1.00, or (iii) reject the Claim, in each case, for voting purposes only.

### ITEM 2.  Vote on the Plan and the Scheme and Release Election.

### IMPORTANT INFORMATION REGARDING CERTAIN RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN THE PLAN

ARTICLE X OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, WHICH ARE SET FORTH AT THE END OF THIS BALLOT IN **EXHIBIT A**.  YOU SHOULD REVIEW THESE PROVISIONS CAREFULLY.

BY GRANTING THE APPLICABLE THIRD-PARTY RELEASES, YOU MAY BE ENTITLED TO AN ADDITIONAL PAYMENT UNDER THE PLAN.
**PLEASE CAREFULLY REVIEW THE PLAN TO DETERMINE HOW GRANTING A RELEASE MAY IMPACT YOUR TREATMENT UNDER THE PLAN.**

**How you vote on the Plan will govern your Release Election options.  Please read carefully the following three options:**

*[handwritten: Unconstitutional]*

*[handwritten: Purdue Precedent]*

**(1) If you vote to accept the Plan, you will be deemed to consent to the Releases.  You may not opt out of granting the Releases if you accept the Plan.**

**(2) If you vote to reject the Plan, you will be deemed to have opted out of granting the Releases.  Nevertheless, you may affirmatively OPT IN to grant the Releases to receive an additional payment as provided under the Plan.  You may indicate this election by checking the appropriate box below.**

*[handwritten: **(EXHIBIT-(I-5): "Rejected Ballot & Unconstitutional Releases"** (Page #70)]*

Voter ID: 5279827

222254902186333

(3) If you __abstain__ from voting on the Plan, you will be deemed to have opted out of granting the Releases.  You may affirmatively __OPT IN__ to grant the Releases by checking the appropriate box below.  If you opt out of granting the Releases, you will __not__ receive any additional payments.

**PLEASE BE ADVISED THAT IF YOU AFFIRMATIVELY CHECK THE BOX BELOW TO OPT IN TO GRANT THE RELEASES, YOU WILL BE GRANTING THE RELEASES IN EACH AND EVERY CAPACITY IN WHICH YOU HOLD A CLAIM AGAINST, OR INTEREST IN, ANY OF THE DEBTORS.  IF YOU ARE ABSTAINING FROM VOTING ON THE PLAN AND DO NOT WISH TO GRANT THE RELEASES, YOU DO NOT NEED TO TAKE ANY ACTION BELOW.**

**PLEASE ALSO BE ADVISED THAT ARTICLE X OF THE PLAN CONTAINS THE DEBTOR RELEASES, NON-GUC RELEASES, GUC RELEASES, EXCULPATION, PLAN INJUNCTION, AND CHANNELING INJUNCTION.  IF YOU OBJECT TO ANY OF THE RELEASE, EXCULPATION, OR INJUNCTION PROVISIONS CONTAINED IN ARTICLE X OF THE PLAN, YOU MUST FILE A SEPARATE OBJECTION WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE PROCEDURES DESCRIBED IN THE DISCLOSURE STATEMENT ORDER.**

The holder of the Class 7(A) PI Opioid Claim against the Debtors set forth in Item 1 above seeks to:

---

*CHECK BOX(ES) IN ONE ROW ONLY*

☐  __ACCEPT__ (vote FOR) the Plan and to appoint the Chairperson as special proxy to vote in favor of the Scheme at the relevant Scheme Meeting and any adjournment thereof.

| ☒  __REJECT__ (vote AGAINST) the Plan and to appoint the Chairperson as special proxy to vote against the Scheme at the relevant Scheme Meeting and any adjournment thereof. | ☒  If you are voting to REJECT the Plan, check this box to __OPT IN__ to grant the Releases contained in __Section 10.3__ of the Plan to receive an additional payment. |
|---|---|
| ☐  __ABSTAIN__ from voting on the Plan. | ☐  If you are ABSTAINING from voting on the Plan, check this box to __OPT IN__ to grant the Releases contained in __Section 10.3__ of the Plan.  **IF YOU DO NOT OPT IN TO GRANT THE RELEASES, YOU WILL __NOT__ RECEIVE ANY ADDITIONAL PAYMENTS.** |

---

Voter ID: 5279827

222254902186333

Any Ballot that is executed by the holder of a Claim, but that indicates both an acceptance and a rejection of the Plan and the Scheme, or does not indicate either an acceptance or rejection of the Plan and the Scheme, will not be counted.

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN AND THE SCHEME.

**ITEM 3. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)    either the undersigned is: (i) the holder of the Class 7(A) PI Opioid Claims being voted; or (ii) an authorized signatory for a person or entity that is a holder of the Class 7(A) PI Opioid Claims being voted, and, in either case, has the full power and authority to vote to accept or reject the Plan and the Scheme and make the Release Election with respect to the Claims identified in Item 1 above;

(b)    the undersigned asserts a claim against Endo Parent and is entitled to vote to accept or reject the Scheme;

(c)    the undersigned has received access to an electronic copy of the Disclosure Statement, the Scheme Circular and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(d)    the undersigned has cast the same vote with respect to all of its Class 7(A) PI Opioid Claims; and

(e)    no other Ballots with respect to the amount of the Class 7(A) PI Opioid Claims identified in Item 1 above have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots are hereby revoked.

**(Page # 72)**

**(EXHIBIT-(I-7): "Rejected Ballot & Unconstitutional Releases")**

8

Voter ID: 5279827

222254902186333

Name of holder: <u>Anderson Jr., Charles Elliott</u>
(Print or Type)

Social Security or Federal Tax Identification Number: ~~████████████~~

Signature: _____

Name of Signatory: _____
(If other than a holder)

Title: MR. Charles E. Anderson Jr.

Address: ~~████ ████████ ███.██~~
Las Cruces, NM. 88001

Date Completed: 2/16/2024

Email Address: ~~████████████~~@gmail.com

No fees, commissions, or other remuneration will be payable to any person for soliciting votes on the Plan or the Scheme.

If your address or contact information has changed, please note the new information here.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

**IF YOU DO NOT INTEND TO SUBMIT ELECTRONICALLY, PLEASE COMPLETE, SIGN AND DATE THIS BALLOT AND RETURN IT PROMPTLY BY FIRST-CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY IN THE PROVIDED RETURN ENVELOPE TO:**

Endo Ballot Processing Center
c/o Kroll Restructuring Administration LLC
850 Third Avenue, Suite 412
Brooklyn, NY 11232

If you plan to hand-deliver your Ballot to Kroll's office, please email Endoballots@ra.kroll.com with "Endo Ballot Submission" in the subject line at least twenty-four (24) hours in advance of your arrival at the Kroll address above to arrange delivery.

**(EXHIBIT-(I-8): "Rejected Ballot & Unconstitutional Releases")** ** ** (Page # 73)

9

222254902186333

**THIS BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY OR BEFORE:**

**4:00 P.M. (PREVAILING EASTERN TIME) ON FEBRUARY 22, 2024.**

**BALLOTS SENT BY FACSIMILE, TELECOPY, OR OTHER ELECTRONIC MEANS (OTHER THAN THROUGH THE SOLICITATION AGENT'S ONLINE PORTAL IN ACCORDANCE WITH THE BELOW) WILL <u>NOT</u> BE ACCEPTED.**

To submit your Ballot electronically via the Solicitation Agent's E-Ballot online portal (**"Online Portal"**), please visit https://restructuring.ra.kroll.com/Endo/EBallot-Home or scan the QR Code provided in your Solicitation Package and click on the "Submit E-Ballot" link on the Case Website and follow the instructions provided within the E-Ballot platform to submit your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

Unique E-Ballot ID#: WBR3-OQGT-XAFC-216D

**The Solicitation Agent's Online Portal is the sole manner in which your Ballot will be accepted via electronic or online transmission. Ballots submitted by telecopy, facsimile, email, or other electronic means of transmission will not be counted.**

**Each Unique E-Ballot ID# is to be used solely for voting only those Claims described in Item 1 of your E-Ballot. Please complete and submit an E-Ballot for each Unique E-Ballot ID# you receive, as applicable.**

**Holders who cast a Ballot using the Solicitation Agent's Online Portal should <u>NOT</u> also submit a paper Ballot.**

**Class 7(A) – PI Opioid Claims**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  Capitalized terms used in the Ballot or in these instructions but not otherwise defined therein or herein shall have the meaning set forth in the Plan or Disclosure Statement Order, as applicable.

2.  To ensure that your Ballot is counted, you ***must either***: (a) complete and submit this hard copy Ballot or (b) vote through the Solicitation Agent's Online Portal at **https://restructuring.ra.kroll.com/Endo/EBallot-Home**. Ballots will not be accepted by facsimile, telecopy or other electronic means (other than through the Online Portal).

3.  <u>**Use of Hard Copy Ballot.**</u> To ensure that your vote is counted, you <u>must</u> complete this Ballot and take the following steps: (a) make sure that the information required in Item 1

**(EXHIBIT (I-9): Rejected Ballot & Unconstitutional Releases)** **(Page #74)**

10

Voter ID: 5279827

222254902186333

above has been inserted as $1.00; (b) clearly indicate your decision either to accept or reject the Plan and Scheme in the boxes provided in Item 2 above; (c) if applicable, make the Release Election in Item 2 above; (d) provide the information required by Item 3 above; and (e) sign, date and return an original of your Ballot to the Kroll address set forth above by regular mail, overnight courier, or hand delivery or in the enclosed pre-addressed envelope.

4. **Use of the Online Portal.** To ensure that your E-Ballot is counted, please follow the instructions found at **https://restructuring.ra.kroll.com/Endo/EBallot-Home**. You will need to enter your Unique E-Ballot ID# indicated on your Ballot. The Online Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. **Ballots will not be accepted by facsimile, electronic mail, or other electronic means (other than through the Online Portal).**

5. **Alternative Methods of Voting on the Scheme Only.** If you (i) wish to submit a proxy to vote on the Scheme differently to the vote you are submitting in relation to the Plan, (ii) wish to vote on the Plan but do not wish to vote on the Scheme, (iii) wish to appoint someone other than the Chairperson as your proxy for the purpose of the relevant Scheme Meeting, or (iv) wish to attend the relevant Scheme Meeting and vote in person, you must obtain a Scheme Voting Form from the Solicitation Agent by emailing endoballots@ra.kroll.com with a reference to "Endo Scheme Voting Form" in the subject line.

6. If the transferee or assignee of a relevant Claim transferred or assigned after the Voting Record Date, but prior to the General Unsecured Scheme Voting Record Date, wishes to vote on the Scheme, they should contact the Solicitation Agent at endoballots@ra.kroll.com to request and obtain a Scheme Voting Form.

7. If a Ballot is received by the Solicitation Agent after the Voting Deadline, it will not be counted, unless the Debtors have granted an extension of the Voting Deadline in writing with respect to such Ballot. Additionally, the following Ballots will **NOT** be counted:

- any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim;

- any Ballot cast by or on behalf of a person or entity that does not hold a Claim in one of the Voting Classes as of the Voting Record Date;

- any Ballot cast for a Claim that is not listed on the Schedules, or that is scheduled at zero, in an unknown amount, or, in whole or in part, as unliquidated, contingent, or disputed, and for which no Proof of Claim was timely filed;

- any Ballot that (a) is properly completed, executed and timely submitted, but does not indicate an acceptance or rejection of the Plan or an abstention from voting on the Plan, (b) indicates both an acceptance and rejection of the Plan or

**(EXHIBIT-(I-10): "Rejected Ballot (Unconstitutional Releases)"** **(Page 75)**

Voter ID: 5279827

222254902186333

either or both of the foregoing and an abstention from voting on the Plan, or (c) partially accepts and partially rejects the Plan;

- any Ballot submitted by facsimile, electronic mail, or other unauthorized electronic transmission (other than through the Online Portal);

- any Ballot sent to the Debtors, the Debtors' agents/representatives (other than the Solicitation Agent), any indenture trustee, or the Debtors' financial or legal advisors;

- any unsigned Ballot; and/or

- any Ballot not cast in accordance with the procedures approved in the Disclosure Statement Order.

8.   For purposes of voting on the Scheme, the Chairperson shall have discretion to accept Scheme Voting Forms or Ballots received after the Voting Deadline but is not required to do so.  Scheme Creditors should refer to the Scheme Circular for further information regarding voting at the Scheme Meetings.

9.   The method of delivery of Ballots to the Solicitation Agent is at the election and risk of each holder of a Claim.  Except as otherwise provided herein, such delivery will be deemed made to the Solicitation Agent only when the Solicitation Agent **actually receives** the originally executed Ballot.  Instead of effecting delivery by first-class mail, it is recommended, though not required, that holders use an overnight or hand delivery service. However, to ensure timely delivery, submission via the Online Portal is strongly recommended.  In all cases, holders should allow sufficient time to assure timely delivery.

10.  If multiple Ballots are received from the same holder of a Claim with respect to the same Claim prior to the Voting Deadline, the last properly completed, valid Ballot timely received will supersede and revoke any earlier received Ballots.

11.  You must vote all of your Claims within a particular Class either to accept or reject the Plan and Scheme and may not split your vote.  Further, if a holder has multiple Claims within the same Class, the Debtors may, in their discretion, aggregate the Claims of any particular holder within a Class for the purpose of counting votes.

12.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to (i) vote to accept or reject the Plan, and (ii) vote to appoint the Chairperson as a special proxy to submit an equivalent vote to accept or reject the Scheme, and (iii) if applicable, make your Release Election.  Accordingly, at this time, holders of Claims should not surrender certificates or instruments representing or evidencing their Claims, and neither the Debtors nor the Solicitation Agent will accept delivery of any such certificates or instruments surrendered together with a Ballot.

13.  This Ballot does not constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim or Interest (except to the extent set out at Item 3(b) in relation to the entitlement to vote and be party to the Scheme).

**(EXHIBIT (I-11): "Rejected Ballot § (Unconstitutional Releases)"**

**(Page 26)**

Voter ID: 5279827

222254902186333

14.     Please be sure to sign and date your Ballot.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such holder.  In addition, please provide your name and mailing address if it is different from what is set forth on the attached mailing label or if no such mailing label is attached to the Ballot.  For the avoidance of doubt, an attorney representing any clients who are holders of Claims in Classes 4(B)-(F), 6(A)-(C), 7(A)-(E), and 8-12 may execute and submit a Ballot on behalf of each such client for such Claims so long as the attorney has the authority under applicable law to vote to accept or reject the Plan (and make Release Elections), and grant a special proxy to the Chairperson of the Scheme Meetings, on behalf of each such client.

15.     If you hold Claims in more than one Class under the Plan, you may receive more than one Ballot coded for each different Class.  Each Ballot votes only your Claims indicated on that Ballot, so please complete and return each Ballot you received.

### PLEASE RETURN YOUR BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT,
THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE
EMAIL THE SOLICITATION AGENT AT ENDOINFO@RA.KROLL.COM (WITH
"ENDO SOLICITATION INQUIRY" IN THE SUBJECT LINE) OR
CALL THE SOLICITATION AGENT AT:
(877) 542-1878 (U.S. / CANADA, TOLL-FREE);
+1 (929) 284-1688 (INTERNATIONAL, TOLL).**

**YOU MAY ALSO CONTACT THE OPIOID CLAIMANTS' COMMITTEE WITH ANY
QUESTIONS AT ENDOCREDITORINFO@AKINGUMP.COM.**

> **IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE
> THIS BALLOT BY OR BEFORE THE VOTING DEADLINE, WHICH IS 4:00 P.M.
> (PREVAILING EASTERN TIME) ON FEBRUARY 22, 2024, THEN YOUR VOTE
> TRANSMITTED HEREBY WILL NOT BE COUNTED.**

NO PERSON HAS BEEN AUTHORIZED BY THE DEBTORS TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, ON BEHALF OF THE DEBTORS, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE SOLICITATION PACKAGE MAILED HEREWITH.

\** (EXHIBIT-(I-12)"Rejected Ballot & Unconstitutional Releases")\** \**(Page #77)\**

13

Voter ID: 5279827

222254902186333

UNCONSTITUTIONAL

# EXHIBIT A[1]

## RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS CONTAINED IN THE PLAN

## ARTICLE I

## DEFINED TERMS

"***Additional Opioid Excluded Parties***" means (a) the Co-Defendants; and (b) any distributor, manufacturer, or pharmacy engaged in the distribution, manufacture, or dispensing/sale of Opioids, Opioid Products, or, solely with respect to the Canadian Provinces, Canadian First Nations, and Canadian Municipalities, Canadian Opioid Products. The Additional Opioid Excluded Parties shall be deemed Excluded Parties solely with respect to the Releases granted or deemed to be granted, as applicable, by the Specified Opioid Claimant Releasing Parties; *provided*, *that*, for the avoidance of doubt, the Additional Opioid Excluded Parties shall not be Excluded Parties with respect to the Releases granted or deemed to be granted by any Non-GUC Releasing Party other than the Specified Opioid Claimant Releasing Parties or any GUC Releasing Party.

"***Excluded Parties***" means (a) the McKinsey Parties; (b) the Arnold & Porter Parties; (c) any of the Debtors' current or former third-party agents, partners, representatives, or consultants involved in the production, distribution, marketing, promotion, or sale of Opioids, Opioid Products, or, solely with respect to the Canadian Provinces, the Canadian First Nations, and the Canadian Municipalities, Canadian Opioid Products (in each case of clauses (a), (b), and (c), excluding the Debtors' (i) current and former officers, directors, and employees (in each case, solely in their respective capacities as such); and (ii) Professionals retained by the Debtors in the Chapter 11 Cases (which, for the avoidance of doubt, shall (1) include any ordinary course professionals; but (2) exclude any Additional Advisor Excluded Parties)); (d) Practice Fusion, Inc.; (e) the Publicis Health Parties; (f) the ZS Associates Parties; and (g) solely with respect to the Specified Opioid Claimant Releasing Parties, the Additional Opioid Excluded Parties, solely in their respective capacities as such. Notwithstanding anything to the contrary in the Plan, none of the following shall be an "Excluded Party": the Debtors' (1) current and former directors (including any Persons in analogous roles under applicable law), officers, and employees, in each case, solely in their respective capacities as such; and (2) Professionals retained by the Debtors in the Chapter 11 Cases (which, for the avoidance of doubt, shall (A) include any ordinary course professionals; but (B) exclude any Additional Advisor Excluded Parties) and, for the avoidance of doubt, each Person identified in the foregoing clauses (1) and (2) shall be a Non-GUC Released Party.

"***Exculpated Claim***" means, in each case, solely to the extent related to an act or omission, or arising, prior to the Effective Date, any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any Claim related to any act or omission

---

[1]    Below is a summary of certain release, exculpation, and injunction provisions in the Plan for your convenience. For the avoidance of doubt, to the extent any provision of this **Exhibit A** conflicts with the terms of the Plan, the terms of the Plan will control. Capitalized terms used below have the meanings ascribed to such terms in the Plan.

**(EXHIBIT-(I-13): "Rejected Ballot & Unconstitutional Releases")    (Page 58)**

in connection with, relating to, or arising out of the Debtors' in- or out-of-court restructuring efforts leading up to the Chapter 11 Cases, the Chapter 11 Cases, or the administration of the Chapter 11 Cases; any foreign recognition proceedings or the administration of such foreign recognition proceedings; the Sale Process, including the negotiation and pursuit thereof, any documents related thereto, and any transactions contemplated thereby or in connection therewith; the negotiation and pursuit of the Plan and the Plan Documents. the Disclosure Statement. the RSA. the Exit Financing, the Rights Offerings, the Scheme, and the Scheme Circular; the Plan, the Plan Transaction, the Restructuring Transactions, the Plan Settlements, and any other transactions contemplated in connection with the foregoing; the negotiation and establishment of the PPOC Trust, any of the PPOC Sub-Trusts, the GUC Trust, any of the Distribution Sub-Trusts, the Future PI Trust, the Public Opioid Trust, the Tribal Opioid Trust, the Canadian Provinces Trust, the EFBD Claims Trust, the Other Opioid Claims Trust, the Trust Documents, the Opioid School District Recovery Trust Governing Documents, the U.S. Government Resolution, and the U.S. Government Resolution Documents; the solicitation of votes for, and Confirmation of, the Plan, the Plan Transaction, and any other transactions or documents contemplated thereby or by the Plan or in connection therewith or with the Plan; the funding of the Plan; the pursuit of Confirmation; the occurrence of the Effective Date; the closing of the Plan Transaction; the implementation and administration of the Plan; or any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, however, that*, "Exculpated Claims" shall not include (a) any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, or liability for any Claim for, or relating to, any act or omission, in each case, determined by a Final Order to be intentional fraud, gross negligence, or willful misconduct; or (b) any GUC Trust Litigation Claim.

"***Exculpated Parties***" means (a)(i) the Debtors, solely in their respective capacities as such; (ii) the Post-Emergence Entities, solely in their respective capacities as such; (iii) the Creditors' Committee and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (iv) the Opioid Claimants' Committee and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (v) the FCR, solely in his capacity as such, and each of the advisors thereto, solely in their respective capacities as such; and (vi) the Plan Administrator and any advisors thereto, in each case, solely in their respective capacities as such; (b) solely to the extent consistent with section 1125(e) of the Bankruptcy Code: (i) the Prepetition Secured Parties, solely in their respective capacities as such; (ii) the Ad Hoc First Lien Group and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (iii) the Ad Hoc Cross-Holder Group and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (iv) the PPOC Trust, each PPOC Sub-Trust, the GUC Trust, each Distribution Sub-Trust, the Future PI Trust, the Public Opioid Trust, the Tribal Opioid Trust, and the Trustees, administrators, boards or governing bodies of, any advisors to, and any other Persons with similar administrative or supervisory roles in connection with any of the foregoing, in each case, solely in their respective capacities as such; (v) the GUC Backstop Commitment Parties, solely in their respective capacities as such; (vi) the First Lien Backstop Commitment Parties, solely in their respective capacities as such; (vii) the Unsecured Notes Indenture Trustees, solely in their

respective capacities as such; (viii) the Endo EC and each of the States that are members thereof and their respective officers and Representatives, in each case, solely in their respective capacities as such; and (c)(i) with respect to the Persons listed in the foregoing clauses (a) and (b), such Persons' predecessors, successors, permitted assigns, current and former subsidiaries and Affiliates, respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such; and (ii) current and former directors (including any Persons in analogous roles under applicable law), officers, employees, and Representatives of each of the Persons listed in the foregoing clauses (a) through (c)(i), in each case, solely in their respective capacities as such. For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, (1) no Excluded Party or GUC Excluded Party (other than the Excluded D&O Parties) shall be an Exculpated Party; and (2) with respect to the Excluded D&O Parties, no Excluded D&O Party shall be exculpated from any GUC Trust Litigation Claim.

"*GUC Excluded Parties*" means (a) the Excluded Parties; and (b)(i) the TPG Parties; (ii) the Insurance Advisor Parties; (iii) the Additional Advisor Excluded Parties; (iv) the Additional Third-Party Excluded Parties and (v) the Excluded D&O Parties (subject to the Covenant Not To Collect).

"*GUC Released Parties*" means (a) the Debtors and their Estates; (b) the Non-Debtor Affiliates; (c) the Post-Emergence Entities; (d) each Consenting First Lien Creditor and Prepetition Secured Party, in each case, solely in their respective capacities as such; (e) the Ad Hoc Cross-Holder Group, the Ad Hoc First Lien Group, and each of the members of the foregoing, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (f) the Opioid Claimants' Committee and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (g) the Creditors' Committee and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the members thereof, in each case, solely in their respective capacities as such; (h) the FCR, solely in his capacity as such, and the advisors to the FCR, solely in their respective capacities as such; (i) the Endo EC and each of the States that are members thereof and their respective officers and Representatives, in each case, solely in their respective capacities as such; (j) the Trusts and the Trustees, administrators, boards or governing bodies of, any advisors to, and any other Persons with similar administrative or supervisory roles in connection with any of the foregoing, in each case, solely in their respective capacities as such; (k) the First Lien Backstop Commitment Parties and the GUC Backstop Commitment Parties, in each case, solely in their respective capacities as such; (l) the Unsecured Notes Indenture Trustees, solely in their respective capacities as such; (m) the Debtors' current officers (as of or after the Petition Date); (n) the Debtors' directors (including any Persons in any analogous roles under applicable law) that continue serving in their capacity as directors with, or become directors of, any of the Purchaser Entities after the Effective Date or continue or begin serving in any other prior senior-level employment position[2] after the Effective Date and performing services commensurate with such

---

[2] For the avoidance of doubt, any individual serving in a position of Band D or higher shall be deemed to be serving in a senior-level employment position.

(EXHIBIT-(I-15): "Rejected Ballot & Unconstitutional Releases")    (Page 80)

Voter ID: 5279827

222254902186333

prior position; [3] (o) current and former officers and directors (including any Persons in any analogous roles under applicable law) of subsidiaries of Endo International plc that are not UCC Specified Subsidiaries; (p) with respect to each of the foregoing Persons listed in clauses (a) through (c), such Persons' predecessors, successors, assigns, current and former subsidiaries and Affiliates, heirs, executors, estates, nominees, current and former employees, advisors, agents, and consultants (including any professional retained by the Debtors in the Chapter 11 Cases except, with respect to ordinary course professionals, as may be agreed on a case-by-case basis, and excluding the Arnold & Porter Parties, the McKinsey Parties, the Insurance Advisor Parties, the Additional Advisor Excluded Parties, and any other GUC Excluded Party), in each case, solely in their respective capacities as such; and (q) with respect to each of the foregoing Persons listed in clauses (d) through (l), such Persons' predecessors, successors, permitted assigns, current and former subsidiaries and Affiliates, respective heirs, executors, estates, nominees, current and former officers, directors (including any Persons in any analogous roles under applicable law), employees, and Representatives, in each case, solely in their respective capacities as such. For the avoidance of doubt, no GUC Excluded Party shall be a GUC Released Party.

"*GUC Releasing Parties*" means (a) the GUC Trust; (b) each Distribution Sub-Trust; (c) each holder of (i) an Other General Unsecured Claim; (ii) a Mesh Claim; or (iii) a Ranitidine Claim, in each case, that (1) votes to accept the Plan; (2) was solicited to vote to accept or reject the Plan but who does not vote either to accept or reject the Plan and, further, opts in to grant the GUC Releases; or (3) votes to reject the Plan and opts in to grant the GUC Releases; (d) each holder of (i) a Second Lien Deficiency Claim; (ii) an Unsecured Notes Claim; (iii) a Generics Price Fixing Claim; or (iv) a Reverse Payment Claim, in each case, that (1) votes to accept the Plan; (2) was solicited to vote to accept or reject the Plan but who does not vote either to accept or reject the Plan and, further, does not opt out of granting the GUC Releases; or (3) votes to reject the Plan and opts in to grant the GUC Releases; and (e) Representatives of each Person in the foregoing clauses (a) through (d), in each case, solely in their respective capacities as such.

"*Non-GUC Released Parties*" means (a) the Debtors and their Estates; (b) the Non-Debtor Affiliates; (c) the Post-Emergence Entities; (d) each Consenting First Lien Creditor and Prepetition Secured Party, solely in their respective capacities as such; (e) the Ad Hoc Cross-Holder Group, the Ad Hoc First Lien Group, and each of the members of the foregoing, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (f) the Opioid Claimants' Committee and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the individual members thereof, in each case, solely in their respective capacities as such; (g) the Creditors' Committee and each of the members thereof, in each case, solely in their respective capacities as such, and each of the advisors thereto or of the members thereof, in each case, solely in their respective capacities as such; (h) the FCR, solely in his capacity as such, and the advisors to the FCR, solely in their respective capacities as such; (i) the Endo EC and each of the States that are members thereof and their respective officers and Representatives, in each case, solely in their respective capacities as

---

[3] For the avoidance of doubt, if a director does not continue in the same position or one or more position(s) of similar seniority post-Effective Date, such individual shall not be a GUC Released Party or a Non-GUC Released Party under this clause (n); *provided, that*, to the extent employed immediately prior to the Effective Date in a senior-level non-director position, such individual was offered employment by any of the Purchaser Entities.

** (EXHIBIT-(I-16) "Rejected Ballot (Unconstitutional Releases)" ** **(Page #81)**

such; (j) the Trusts and the Trustees, administrators, boards or governing bodies of, any advisors to, and any other Persons with similar administrative or supervisory roles in connection with, any of the foregoing, in each case, solely in their respective capacities as such; (k) the First Lien Backstop Commitment Parties and the GUC Backstop Commitment Parties, in each case, solely in their respective capacities as such; (l) the Unsecured Notes Indenture Trustees, solely in their respective capacities as such; (m) with respect to each of the foregoing Persons listed in clauses (a) through (l), such Persons' predecessors, successors, permitted assigns, current and former subsidiaries and Affiliates, respective heirs, executors, estates, and nominees, in each case, solely in their respective capacities as such; and (n) with respect to each of the foregoing Persons listed in clauses (a) through (m), such Persons' current and former officers, directors (including any Persons in any analogous roles under applicable law), employees, and Representatives, in each case, solely in their respective capacities as such.  Notwithstanding the foregoing or anything to the contrary in the Plan or in any other Plan Document, "Non-GUC Released Parties" shall not include any Excluded Party and all Claims and Causes of Action against such Persons shall be preserved and not released in accordance with the Plan.

"**Non-GUC Releasing Parties**" means each (a) Non-GUC Released Party, other than (i) the Debtors; and (ii) the Post-Emergence Entities; (b) holder of a State Opioid Claim; (c) holder of (i) a PI Opioid Claim; (ii) a NAS PI Claim; (iii) an IERP II Claim; (iv) an Other Opioid Claim; or (v) an EFBD Claim, in each case, that (1) votes to accept the Plan; (2) was solicited to vote to accept or reject the Plan but that does not vote to either accept or reject the Plan and, further, opts in to grant the Non-GUC Releases; or (3) votes to reject the Plan and opts in to grant the Non-GUC Releases; (d) holder of (i) a Priority Non-Tax Claim; (ii) an Other Secured Claim; (iii) a First Lien Claim; (iv) a Local Government Opioid Claim; (v) a Tribal Opioid Claim; (vi) a Hospital Opioid Claim; (vii) a TPP Claim; (viii) a Public School District Claim; (ix) a Canadian Provinces Claim; (x) a Settling Co-Defendant Claim; (xi) a Subordinated, Recharacterized, or Disallowed Claim; or (xii) an Existing Equity Interest, in each case, that (1) votes to accept the Plan; (2) is presumed to accept the Plan and does not opt out of granting the Non-GUC Releases; (3) is deemed to reject the Plan and does not opt out of granting the Non-GUC Releases; (4) was solicited to vote to accept or reject the Plan but who does not vote either to accept or reject the Plan and, further, does not opt out of granting the Non-GUC Releases; or (5) votes to reject the Plan and opts in to grant the Non-GUC Releases; and (e) Representatives of each Person in the foregoing clauses (a), (b), (c), and (d), in each case, solely in their respective capacities as such.

"**Released Claims**" means any and all Claims and Causes of Action arising at any time prior to or on the Effective Date and relating in any way to the Debtors (whether as the Debtors existed prior to the Petition Date or as debtors-in-possession), the Estates, the Debtors' business, or the Chapter 11 Cases or related foreign recognition proceedings, including, without limitation, any and every Cause of Action, including any and every Claim and action, class action, cross-claim, counterclaim, third-party Claim, controversy, dispute, demand, right, lien, indemnity, contribution, right of subrogation, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, loss, cost, attorneys' fees and expenses, account, defense, remedy, offset, power, privilege, license, or franchise, in each case, of any kind, character, or nature whatsoever, asserted or unasserted, accrued or unaccrued, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, Secured or unsecured, Allowed, Disallowed, or Disputed, assertible directly or derivatively (including, without limitation,

**(EXHIBIT-(I-17): "Rejected Ballot & Unconstitutional Releases"** **(Page 82)**

Voter ID: 5279827

222254902186333

under alter-ego theories), in rem, quasi in rem, in personam, or otherwise, whether arising before, on, or after the Petition Date, whether arising under federal statutory law, state statutory law, common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, in contract or in tort, at law, in equity, or pursuant to any other theory or principle of law, including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance (other than any Specified Avoidance Action), willful misconduct, veil piercing, unjust enrichment, disgorgement, restitution, contribution, indemnification, rights of subrogation, and joint liability, regardless of where in the world accrued or arising, including, for the avoidance of doubt, (a) any Cause of Action held by a natural person who is not yet born or who has not yet attained majority as of the Petition Date or as of the Effective Date, as applicable; (b) any right of setoff, counterclaim, or recoupment, and any Cause of Action for breach of contract or for breach of duty imposed by law or in equity; (c) the right to object to or otherwise contest Claims or Interests; (d) any Cause of Action pursuant to section 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code; (e) any claim or defense, including fraud, mistake, duress and usury, and any other defense set forth in section 558 of the Bankruptcy Code; and (f) any claim under any federal, state, or foreign law, including for the recovery of any fraudulent transfer or similar theory (other than any Specified Avoidance Action) arising at any time prior to or on the Effective Date and relating in any way to the Debtors (whether as the Debtors existed prior to the Petition Date or as debtors-in-possession), the Estates, the Debtors' business, the Chapter 11 Cases, or foreign recognition proceedings relating to the Chapter 11 Cases, including, without limitation, any and all Claims and Causes of Action based on or relating to, or in any manner arising from, in whole or in part: (i) Opioids, Opioid Products, Canadian Opioid Products, and Opioid-Related Activities; (ii) the Debtors' use of Cash in accordance with the Cash Collateral Order; (iii) any Avoidance Actions that are not Specified Avoidance Actions (for the avoidance of doubt, Specified Avoidance Actions shall not be Released Claims); (iv) the negotiation, formulation, preparation, dissemination, filing, or implementation of, prior to the Effective Date, the Sale Process, the Bidding Procedures Order, the Plan, the Plan Transaction, the Plan Documents, the Transaction Steps Order, the Plan Settlements, the Trusts, the Trust Documents, the Opioid School District Recovery Trust Governing Documents, the U.S. Government Resolution Documents, the Exit Financing Documents, the Rights Offering Documents, the RSA, the Restructuring Transactions, the India Internal Reorganization, the Scheme, the Scheme Circular, and any contract, instrument, release, or any other similar document or agreement entered into in connection with the foregoing or any transactions or other actions or omissions contemplated thereby; (v) the administration and implementation of the Plan, including the Restructuring Transactions, the Exit Financing, the Rights Offerings and the Backstop Commitment Agreements, the Plan Transaction, and the Plan Settlements, the issuance or distribution of equity and/or debt securities and/or indebtedness in connection therewith or with the Plan, and any other transactions, actions, omissions, or documents contemplated thereby or by the Plan; (vi) the establishment and funding of the Trusts, the implementation of the Plan Settlements, and any other actions taken in connection therewith or contemplated thereby; and (vii) any other act or omission, transaction, agreement, event, or other occurrence or circumstance taking place on or before the Effective Date related or relating to any of the foregoing. For the avoidance of doubt, "Released Claims" shall not include any (1) Claims or Causes of Action against any Excluded Party or, solely with respect to the GUC Releasing Parties, any GUC Excluded Party; or (2) GUC Trust Litigation Claims.

*Handwritten annotations:* "covering tracks"; "22-22549 / ECF DOC 20 / RSA"; "ECF DOC 20 / RSA"; "SHOWS BANKRUPTCY INTENTION / Planned / Shed / to All / OPIOID / Liabilities"; "Pre-Planned / 'Get away'"

**(EXHIBIT-(I-18): "Rejected Ballot & Unconstitutional Releases")** ** (Page #83) **

"***Specified Opioid Claimant Releasing Parties***" means (a) the PPOC Trust; (b) each PPOC Sub-Trust; (c) each Present Private Opioid Claimant; (d) the Future PI Trust; (e) each Future PI Claimant; (f) the Canadian Provinces Trust; (g) each Canadian Province; (h) each Canadian First Nation; (i) each Canadian Municipality; and (j) each Public School District Creditor, in each case, that grants or is deemed to grant, as applicable, the Non-GUC Releases, solely in their respective capacities as such.

*[handwritten: Unconstit'l]*

## ARTICLE X

## RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS

### A.   Settlements

#### 1.   **Section 10.1.** Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of (a) all Released Claims; and (b) all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Post-Emergence Entities may compromise and settle Claims against them and Causes of Action against other Persons.

### B.   Debtor, Non-GUC, and GUC Releases

*[handwritten: Law Violation   Purdue Precedent]*

#### 1.   **Section 10.2.** Debtor Releases

(a)   Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, the Debtors, their Estates, and the Post-Emergence Entities are deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Debtor Released Party from any and all Released Claims.  Notwithstanding anything in the Plan to the contrary, the Debtor Releases do not release any post-Effective Date obligations of any Person or Entity under the Plan, any Plan Document, the Plan Transaction, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan and the Plan Transaction, and shall not result in a release, waiver, or discharge of any Indemnification Obligations assumed by the Purchaser Entities as set forth in the Plan; provided, however, that, nothing in Section 10.2 of the Plan shall be construed to release (i) the GUC Trust Litigation

*[handwritten: **(EXHIBIT-(I-19): "Rejected Ballot & Unconstitutional Releases)"    **(Page 84)**]*

222254902186333

75795-25

*THEY KNEW! ECF 605 / RSA - ECF 20*

Claims: or (ii) any Person or Entity from a claim for intentional fraud or willful misconduct, in each case, as determined by a Final Order.

(b)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Releases and, further, shall constitute the Bankruptcy Court's finding that the Debtor Releases are: (i) in exchange for the good and valuable consideration provided by the Debtor Released Parties, including, without limitation, the Debtor Released Parties' contributions to facilitating the Debtors' restructuring and the implementation of the Plan; (ii) a good faith settlement and compromise of the Released Claims; (iii) in the best interests of the Debtors, their Estates, and all holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, their Estates, or the Post-Emergence Entities asserting any Released Claim.

(c)     In addition to the foregoing Debtor Releases, the Debtors shall release the applicable Claims against the Settling Co-Defendants set forth in, and in accordance with the terms of, the mutual releases by the Debtors, their Estates, and the Post-Emergence Entities, on the one hand, and the Settling Co-Defendants, on the other hand, in each case, as set forth in the DMP Stipulation.  For the avoidance of doubt, any Releases with respect to Settling Co-Defendants shall be subject to the terms of the DMP Stipulation.

2.     **Section 10.3. Non-GUC Releases**

(a)     Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, and to the fullest extent allowed by applicable law, each Non-GUC Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Non-GUC Released Party from any and all Released Claims.  For the avoidance of doubt, no Non-GUC Releasing Party shall release any Excluded Party (including, solely with respect to any Non-GUC Release granted by any Specified Opioid Claimant Releasing Party, any Additional Opioid Excluded Parties).

(b)     For the avoidance of doubt and without limitation of the foregoing, each holder of a State Opioid Claim and each holder of a Tribal Opioid Claim that (i) is a governmental unit (as defined in section 101(27) of the Bankruptcy Code) or a Tribe; and (ii) grants or is deemed to grant, as applicable, the Non-GUC Releases shall, in each case, be deemed to have released all Released Claims that have been asserted or are, or have been, assertible by (1) such governmental unit (as defined in section 101(27) of the Bankruptcy Code) or Tribe in its own right, in its parens patriae or sovereign enforcement capacity, or on behalf, or in the name, of another Person; or (2) any other governmental official, employee, agent, or Representative acting or purporting to act in a parens patriae, sovereign enforcement, or quasi-sovereign enforcement capacity, or any other capacity, on behalf of such governmental unit (as defined in section 101(27) of the Bankruptcy Code) or Tribe.

(c)     Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, the Non-GUC Releasing Parties are deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Non-GUC Released Party from any and all Released Claims.  Notwithstanding anything in the Plan to the contrary, the Non-

*(EXHIBIT -(I-20): "Rejected Ballot & Unconstitutional Releases)* ** **(Page #85)** **

Voter ID: 5279827

222254902186333

GUC Releases do not release (i) any Excluded Party; (ii) any post-Effective Date obligations of any Person or Entity under the Plan, any Plan Document, the Plan Transaction, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan and the Plan Transaction, and shall not result in a release, waiver, or discharge of any Indemnification Obligations assumed by the Purchaser Entities as set forth in the Plan; (iii) any GUC Trust Litigation Claim; (iv) any Person or Entity from a claim for intentional fraud or willful misconduct as determined by a Final Order; (v) with respect to the States, (1) any Regulatory Approval process required by the States (including their respective State agencies) in connection with the Plan Transaction; (2) any criminal action or criminal proceeding arising under a criminal provision of any State statute or law by a governmental entity that has authority to bring a criminal action or proceeding or to adjudicate a Person's guilt or to set a convicted Person's punishment; or (3) any Claims or Causes of Action against (x) any Excluded Party; or (y) any party identified in clauses (j) or (l) of the definition of "Non-GUC Released Parties," in their capacities as such (and, solely with respect to such parties, any party identified in clauses (m) or (n) of the definition of "Non-GUC Released Parties"); *provided*, *that*, for the avoidance of doubt, the States shall not release any VOI-Specific Post-Emergence Entities of any Claims or Causes of Action relating to such entities' (A) compliance with the Voluntary Opioid Operating Injunction; and (B) acts occurring after the Effective Date; and (vi) with respect to the Canadian Provinces, (1) any Regulatory Approval process required by the Canadian Provinces (including their respective agencies) in connection with the Plan Transaction; (2) any criminal action or criminal proceeding arising under a criminal provision of any statute or law by a Governmental Authority that has authority to bring a criminal action or proceeding or to adjudicate a person's guilt or to set a convicted person's punishment; (3) any Claims or Causes of Action against any Excluded Party; or (4) the ability of each of the Canadian Provinces to legislate, regulate, or administer and enforce federal, provincial, or territorial legislation (including regulations) such as the Criminal Code, Food and Drugs Act, and the Controlled Drugs and Substances Act (*provided*, *that*, such activity does not seek to recover civil damages, civil restitution, or other relief of the kind that was sought or could have been sought in the Canadian Provinces Class Action or in the Canadian Provinces McKinsey Action).

(d)     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Non-GUC Releases and, further, shall constitute the Bankruptcy Court's finding that the Non-GUC Releases are: (i) essential to the Confirmation of the Plan; (ii) consensually given in exchange for the good and valuable consideration provided by the Non-GUC Released Parties, including, without limitation, the Non-GUC Released Parties' contributions to facilitating the restructuring and implementation of the Plan and the Plan Transaction; (iii) a good faith settlement and compromise of the Released Claims; (iv) in the best interests of the Debtors and their Estates; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Non-GUC Releasing Parties asserting any Released Claim.

*Unconstitutional !*

### 3.     **Section 10.4. GUC Releases**

(a)     Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, the GUC Releasing Parties are deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each GUC Released Party from any and all Released Claims. Notwithstanding anything in the Plan to the contrary, (i) the GUC

** (EXHIBIT (I-21): "Rejected Ballot & Unconstitutional Releases)" ** **(Page #86)**

Voter ID: 5279827

222254902186333

Releases do not release any (1) post-Effective Date obligations of any Person or Entity under the Plan, any Plan Document, the Plan Transaction, any Restructuring Transaction, or any document, instrument, or agreement executed to implement the Plan and the Plan Transaction, and shall not result in a release, waiver, or discharge of any Indemnification Obligations assumed by the Purchaser Entities as set forth in the Plan; (2) GUC Trust Litigation Claim; or (3) Person or Entity from a claim for intentional fraud or willful misconduct as determined by a Final Order; (ii) none of the GUC Releasing Parties release or shall be deemed to release any GUC Trust Litigation Claim (and such Claims and Causes of Action are preserved, in each case, subject to the Covenant Not To Collect); and (iii) the Covenant Not To Collect shall be binding on any transferee, successor, or assign in connection with any transfer, pledge, sale, hypothecation, assignment, or other disposal of Claims solely against any Excluded D&O Parties, and the failure of any recipient of any Claims solely against any Excluded D&O Party to agree to such covenant shall render any such transfer, pledge, sale, hypothecation, assignment, or other disposal of Claims void ab initio. The Excluded D&O Parties are third-party beneficiaries with rights of enforcement with respect to the Covenant Not To Collect. For the avoidance of doubt, no GUC Releasing Party shall release or be deemed to release any GUC Trust Litigation Claims.

(b)    Upon granting or being deemed to grant, as applicable, the GUC Releases, the GUC Releasing Parties shall be deemed to covenant (the "Covenant Not To Collect") that (a) any recovery by the GUC Trust or any other GUC Releasing Party on account of any Claim or Cause of Action, direct or indirect, against an Excluded D&O Party including, in each case, by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the GUC Trust D&O Insurance Policies; (b) any party, including any GUC Trustee or Trustee of a Distribution Sub-Trust and all other GUC Releasing Parties, seeking to execute, garnish, or otherwise attempt to collect on any settlement of or judgment on account of Claims or Causes of Action against Excluded D&O Parties shall do so solely upon available insurance coverage, if any, from the GUC Trust D&O Insurance Policies; and (c) the GUC Releasing Parties shall not otherwise attempt to collect, directly or indirectly, from the personal assets of any Excluded D&O Party. The Covenant Not To Collect shall be binding on any transferee, successor, or assign in connection with any transfer, pledge, sale, hypothecation, assignment, or other disposal of Claims or Causes of Action against the Excluded D&O Parties and, in connection with any such transfer, the failure of a transferee to agree to the Covenant Not To Collect shall render such transfer void ab initio. Each of the Excluded D&O Parties are express third-party beneficiaries of this Covenant Not To Collect.

(c)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the GUC Releases and, further, shall constitute the Bankruptcy Court's finding that the GUC Releases are: (i) in exchange for the good and valuable consideration provided by the GUC Released Parties, including, without limitation, the GUC Released Parties' contributions to facilitating the Debtors' restructuring and the implementation of the Plan; (ii) a good faith settlement and compromise of the Released Claims; (iii) in the best interests of the Debtors, their Estates, and all holders of Claims and Interests; (iv) fair, equitable,

_FRAUD_

Unconstitutional

**(EXHIBIT-(I-22): "Rejected Ballot & Unconstitutional Releases")** ** (Page #87)**

10

222254902186333

and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any GUC Releasing Party asserting any Released Claim.

### 4.   Section 10.5.   Effect of Releases to Holders of Trust Channeled Claims

*Now Unconstitutional*

(a)      Holders of Trust Channeled Claims shall have the option to grant or opt out of granting, as applicable, the Non-GUC Releases or the GUC Releases, as applicable.

(b)      In addition to the amount of any Distribution to be provided by a Trust to a holder of an Allowed Trust Channeled Claim (other than a (i) Canadian Provinces Claim; (ii) State Opioid Claim; or (iii) Tribal Opioid Claim) that is a Non-GUC Releasing Party or a GUC Releasing Party, as applicable, such Non-GUC Releasing Party or GUC Releasing Party, as applicable, shall receive an additional payment in exchange for granting or being deemed to grant, as applicable, the Non-GUC Releases or the GUC Releases, as applicable.

### C.   Exculpations and Injunction

### 1.   Section 10.6. Exculpation

*FRAUD*

(a)      Notwithstanding anything contained in the Plan to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur liability for, and each Exculpated Party is released and exculpated from, any Exculpated Claim, obligation, Cause of Action or liability for any Exculpated Claim, except for gross negligence, intentional fraud, or willful misconduct (to the extent such duty is imposed by applicable non-bankruptcy law), but in all respects such Persons shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  For the avoidance of doubt, this exculpation shall be in addition to, and not in limitation of, the Releases and all other releases, indemnities (including the Indemnification Obligations), exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.  For the avoidance of doubt, the Debtors, their Estates, and the Post-Emergence Entities are not (i) exculpating any (1) Excluded Party; (2) TPG Party; (3) Insurance Advisor Party; (4) Additional Advisor Excluded Party; or (5) Additional Third-Party Excluded Party; or (ii) releasing any GUC Trust Litigation Claims.

*New Unconstitutional*

(b)      The Exculpated Parties have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws and provisions of the Bankruptcy Code with regard to the solicitation of votes on, and Distribution of consideration (including securities) pursuant to, the Plan and, therefore, are not, and on account of such Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan, including, in each case, any Distribution made by any Trust in accordance with the Plan and the applicable Trust Documents.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release or exculpate any claim relating to any post-Effective Date obligations of any Person under the Plan, any Restructuring

*Pre-Planned Fraud ECF 20*

*(Page #88)*

*(EXHIBIT (I-23): "Rejected Ballot & Unconstitutional Releases")*

11

Transaction, the Plan Transaction, or any Plan Document or other document, instrument, or agreement executed to implement the Plan.

*Unconstitutional*

### Section 10.7. Discharge of Claims and Termination of Interests

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release, and discharge to the fullest extent permitted by section 1141 of the Bankruptcy Code, effective as of the Effective Date, of all Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against the Debtors or the Debtors' Estates or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; (c) the holder of such a Claim or Interest has voted to accept the Plan; or (d) the holder of such Claim or Interest has voted or failed to vote to accept or reject the Plan. All Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code. All Entities shall be precluded from asserting any Claims against the Debtors, their Estates, the Post-Emergence Entities, their respective successors and assigns, and their respective Assets and properties, and any other Claims or Interests based upon any documents, instruments, or any act of omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date. The Confirmation Order shall be a judicial determination (i) of the discharge of all Claims and Interests, subject to the Effective Date; and (ii) that no Claims shall be excepted from discharge under section 1141(d)(6) of the Bankruptcy Code.

*Fraud*

3. ### Section 10.8. Plan Injunction    *Unconstitutional Rejected*

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE PLAN SUPPLEMENT, ANY OTHER PLAN DOCUMENT, OR ANY OTHER RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE X OF THE PLAN, DISCHARGED PURSUANT TO SECTION 10.7 OF THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 10.6 OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE RELEASED PARTIES, INCLUDING, FOR THE AVOIDANCE OF DOUBT, IN EACH CASE, THE DEBTORS, THEIR ESTATES, THE POST-EMERGENCE ENTITIES, AND ANY OF THEIR ASSETS, AND THE EXCULPATED PARTIES, AS APPLICABLE: (A) COMMENCING OR CONTINUING IN ANY MANNER OR IN ANY PLACE ANY ACTION, EMPLOYMENT

**(EXHIBIT-(I-24):"Rejected Ballot & Unconstitutional Releases"** **(Page #89)**

Voter ID: 5279827

222254902186333

*Unconstitutional*                    *Rejected.*

**OF PROCESS, OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATES OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY, OR OBLIGATION DUE TO THE DEBTORS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS, EXCEPT AS SET FORTH IN <u>SECTION 10.9</u> OF THE PLAN. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, <u>SECTION 10.8</u> OF THE PLAN SHALL NOT ENJOIN THE GUC TRUST'S PURSUIT OF ANY GUC TRUST LITIGATION CLAIMS.**

### 4.    <u>Section 10.9.</u> Channeling Injunction

(a)    In order to preserve and promote the resolutions contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction and the releases set forth in Article X of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, upon the channeling of the Trust Channeled Claims, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Trust Channeled Claim shall be (x) deemed to release any Trust Channeled Claims held by such Persons against the Debtors and the Post-Emergence Entities; and (y) permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any of the Debtors or Post-Emergence Entities, as applicable, with respect to any Trust Channeled Claim, including:

*FRAUD*

(i)    commencing, conducting, or continuing, in any manner, whether directly or indirectly, any suit, action, or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Trust Channeled Claims, against or affecting any of the Debtors or the Post-Emergence Entities, as applicable, or any property or interests in property of any of the Debtors or the Post-Emergence Entities, as applicable, with respect to any Trust Channeled Claims;

(ii)    enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree, or other order against any of the Debtors or the Post-Emergence Entities, as applicable, with respect to any Trust Channeled Claims;

(iii)    creating, perfecting, or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any of the Debtors or the Post-Emergence Entities, as applicable, or the property of any of the Debtors or the Post-

EXHIBIT (I-25): "Rejected Ballot & Unconstitutional Releases" ** *(Page 90)*

75795-25

Emergence Entities, as applicable, in each case, with respect to any Trust Channeled Claims;

(iv) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any of the Debtors or Post-Emergence Entities, as applicable, or against the property of any of the Debtors or the Post-Emergence Entities, as applicable, in each case, with respect to Trust Channeled Claims; and

(v) taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan or any Plan Document (including, for the avoidance of doubt, any Trust Document) with respect to any Trust Channeled Claims.

(b) Notwithstanding anything to the contrary in Section 10.9 of the Plan or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar, or enjoin:

(i) the rights of holders of Trust Channeled Claims to the treatment afforded to them under the Plan and the Plan Documents, including the rights of holders of Trust Channeled Claims to assert such Trust Channeled Claims solely in accordance with the Plan and the Trust Documents;

(ii) the rights of Persons to assert any Claim, debt, litigation, or liability for payment of Trust Operating Expenses against the applicable Trust;

(iii) the rights of any Person to assert any Claim, Cause of Action, debt, or litigation against any Excluded Party;

(iv) the rights of the GUC Trust to assert any GUC Trust Litigation Claims against any GUC Excluded Party, subject to the Covenant Not To Collect;   — FRAUD

(v) the rights of the GUC Trust to pursue and enforce any GUC Trust Litigation Claims, including the GUC Trust Insurance Rights;

(vi) the Distribution Sub-Trusts from enforcing their respective rights against the GUC Trust under the Plan and the GUC Trust Documents;

(vii) the PPOC Trust from enforcing its rights against the Purchaser Entities under the Plan and the PPOC Trust Documents;

(viii) the PPOC Sub-Trusts from enforcing their respective rights against the PPOC Trust under the Plan and the PPOC Trust Documents; or

(ix) the Future PI Trust from enforcing its rights against the Purchaser Entities under the Plan and the Future PI Trust Documents.

(c) There can be no modification, dissolution, or termination of the Channeling Injunction, which shall be a permanent injunction, and nothing in the Plan or any Plan Document

Unconstitutional

** (EXHIBIT-(I-26): "Rejected Ballot ; Unconstitutional Releases)** ** (Page 91)**

Voter ID: 5279827

222254902186333

(including, for the avoidance of doubt, any Trust Document) shall be construed in any way to limit the scope, enforceability, or effectiveness of the Channeling Injunction issued in connection with the Plan. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

(d)     In the event that any Person takes any action that a Released Party or Exculpated Party, as applicable, believes violates the releases provided in the Plan or the Channeling Injunction as it applies to any Released Party or Exculpated Party, as applicable, such Released Party or Exculpated Party, as applicable, shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter Final Orders in connection with any dispute over whether an action violates the releases provided in the Plan or the Channeling Injunction. Upon determining that such a violation has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person.



\* HOSTILE FIDUCIARIES \*

5.     [Section 10.10. Specified Debtor Insurer Injunction

(a)     Terms

In accordance with section 105(a) of the Bankruptcy Code, on the Effective Date, all persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim based on, arising out of, attributable to, or in any way connected with any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy (but not, for the avoidance of doubt, any Non-GUC Trust D&O Insurance Policy) shall be permanently enjoined from taking any action for purposes of directly or indirectly collecting, recovering, or receiving payment on account of any such Claim, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, including:

*Unconstitutional*

(i)     commencing, conducting, or continuing, in any manner, any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any Specified Debtor Insurer, or against the property of any Specified Debtor Insurer, (1) on account of any Claim based on, arising under, or attributable to a GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy; or (2) on account of any rights of any Person under a "direct action" statute to proceed directly against any Specified Debtor Insurer;

(ii)     enforcing, attaching, levying, collecting, or otherwise recovering, by any manner or means, any judgment, award, decree, or other order against any Specified Debtor Insurer, or against the property of any Specified Debtor Insurer, on account of any Claim based on, arising under, or attributable to any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy;

(iii)     creating, perfecting, or enforcing, in any manner, any Lien of any kind against any Specified Debtor Insurer, or against the property of any Specified Debtor Insurer, on account of any Claim based on, arising under, or attributable to any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy;

\*\* (EXHIBIT-(I-27): "Rejected Ballot & Unconstitutional Releases") \*\* \*\* (Page #92) \*\*

Voter ID: 5279827

222254902186333

(iv)      asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, whether directly or indirectly, against any obligation due to any Specified Debtor Insurer, or against the property of any Specified Debtor Insurer, on account of any Claim based on, arising under, or attributable to any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy; and

(v)      taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under, or attributable to any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy.

(b)    Reservations

Notwithstanding anything to the contrary in Section 10.10(a) of the Plan, the provisions of the Specified Debtor Insurer Injunction:

(i)      shall not (1) preclude the GUC Trust from pursuing any Claim based on, arising under, or attributable to any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy, or any other Claim that may exist under any GUC Trust Insurance Policy or GUC Trust D&O Insurance Policy against any Specified Debtor Insurer; or (2) enjoin the rights of the GUC Trust to prosecute any action based on or arising from the GUC Trust Insurance Policies or GUC Trust D&O Insurance Policies or the rights of the GUC Trust to assert any Claim, debt, obligation, Cause of Action for liability for payment against a Specified Debtor Insurer based on or arising from the GUC Trust Insurance Policies, in all cases, including GUC Trust Litigation Claims;

(ii)      are not issued for the benefit of any Specified Debtor Insurer, and no such insurer is a third-party beneficiary of this Specified Debtor Insurer Injunction; provided, that, this Specified Debtor Insurer Injunction shall not enjoin, impair or affect any Claims between or among unsettled Specified Debtor Insurers;

(iii)      shall not apply to any D&O Insured Person with respect to such D&O Insured Person's coverage under any GUC Trust D&O Insurance Policy; and

(iv)      shall be subject in all respects to the terms of the DMP Stipulation.

(c)      For the avoidance of doubt, Section 10.10 of the Plan shall not apply with respect to any Non-GUC Trust Insurance Policy, including any Non-GUC Trust D&O Insurance Policy, and no amendment to, or modification of, nor any proposed amendment to nor modification of, the Specified Debtor Insurer Injunction shall adversely impact (i) any Non-GUC Trust Insurance Policy; or (ii) the rights of any D&O Insured Person with respect to such D&O Insured Person's coverage under any Debtor Insurance Policy (including, for the avoidance of doubt, the GUC Trust Insurance Policies, the GUC Trust D&O Insurance Policies, and the Non-GUC Trust Insurance Policies).

(d)      The GUC Trust shall have the sole and exclusive authority at any time, upon written notice to any insurer under any of the GUC Trust Insurance Policies or GUC Trust D&O Insurance Policies, to terminate, reduce or limit the scope of this Specified Debtor Insurer Injunction with

**(EXHIBIT-(I-28): "Rejected Ballot & Unconstitutional Releases)**

Voter ID: 5279827

**(Page 93)**

222254902186333

respect to any Specified Debtor Insurer; provided, however, that, no modification shall affect the rights of any D&O Insured Person with respect to such D&O Insured Person's coverage under any Debtor Insurance Policy (including, for the avoidance of doubt, the GUC Trust Insurance Policies, the GUC Trust D&O Insurance Policies, and the Non-GUC Trust Insurance Policies).][4]

### 6.    **Section 10.11.**  **Voluntary Opioid Operating Injunction.**

(a)    From and after the date of entry of the Confirmation Order approving the Voluntary Opioid Operating Injunction, the business operations of the VOI-Specific Debtors and/or VOI-Specific Post-Emergence Entities, as applicable, and the business operations of any successors of either of the foregoing, in each case, relating solely to the manufacture and sale of VOI Opioid Products in the States and Territories shall be subject to the terms of the Voluntary Opioid Operating Injunction.

(b)    The VOI-Specific Debtors and VOI-Specific Post-Emergence Entities, as applicable, consent to the entry of a final judgment or consent order on the Effective Date effectuating all of the provisions of the Voluntary Opioid Operating Injunction in the state court in each of the Supporting Governmental Entities.

(c)    After the Effective Date, the Voluntary Opioid Operating Injunction will be enforceable in the state court in each of the Supporting Governmental Entities. The VOI-Specific Debtors and VOI-Specific Post-Emergence Entities agree that seeking entry or enforcement of such a final judgment or consent order will not violate any other injunctions or stays that it will seek, or that may otherwise apply, in connection with the Chapter 11 Cases or Confirmation.

### 7.    **Section 10.12.**  **Term of Injunctions or Stays.**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

\*\*(EXHIBIT-(I-29): "Rejected Ballot & Unconstitutional Releases")\*\*

\*\*(Page #94)\*\*

Voter ID: 5279827

222254902186333

---

[1]   **Note to Draft:** under consideration.

Eballot Confirmation:              3045-2-WMQIV-843229429

EBallot Electronically Submitted on (UTC) :2024-02-20T18:08:15.076Z

Submitted by: **Charles Elliott Anderson jr**
              **thankyoulord2019@gmail.com**



** (EXHIBIT-(I-30): "Rejected Eballot Confirmation- 2-20-2024")**

**(Page #95)**