**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NOT FOR PUBLICATION

-------------------------------------------------------- x

In re:                                                                  :

                                                                              :

Branded Operations Holdings, Inc., *et al.*,            :

                                                                              :

                                            Debtors.[1]          :

-------------------------------------------------------- x

Case No. 22-22608 (JLG)
Chapter 11


(Jointly Administered)

## MEMORANDUM DECISION AND ORDER
## GRANTING PRE-FILING INJUNCTION


**APPEARANCES:**

Seward & Kissel LLP
*Counsel to the Plan Administrator*
*Patrick J. Bartels*
One Battery Park Plaza
New York, NY 10004
By:    Brian P. Maloney
          Catherine V. LoTempio

Charles Elliott Anderson
*Appearing Pro Se*
1205 California Ave. #2
Las Cruces, NM 88001

---

[1] The last four digits of Debtor Branded Operations Holdings Inc.'s tax identification number are 6945. Due to the large number of debtors in these Chapter 11 Cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these Chapter 11 Cases is: 1400 Atwater Drive, Malvern, PA 19355.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[2]

In these Chapter 11 Cases, the Confirmation Order is final and non-appealable, and the Plan has gone effective. Under the Plan, Patrick J. Bartels, Jr. (the "Plan Administrator") is the administrator for the post-confirmation debtors Endo International plc and its Debtor affiliates (collectively, the "Remaining Debtors"). Edgar C. Gentle, III (the "PI Trustee") is the trustee of the Endo Opioid Personal Injury Trust (the "PI Trust") formed under the Plan.

Charles Elliott Anderson, Jr. ("Mr. Anderson") is a self-described "surviving victim" and personal injury claimant in these Chapter 11 Cases. Under the Plan, Mr. Anderson holds an allowed Class 7A-PI Opioid Claim in the sum of $5 million (the "Claim") that will be satisfied on a pro-rata basis out of the proceeds of the Endo Opioid PI Trust, pursuant to the Endo PI Trust Distribution Procedures ("PI TDP").[3] Mr. Anderson voted against confirmation of the Plan. Nonetheless, on his Ballot, he elected to grant a third-party release (the "Non-GUC Release" and collectively, the "Non-GUC Releases") in consideration for an additional Plan payment (defined below as the "Non-GUC Multiplier"). Mr. Gentle has advised Mr. Anderson that based on the funds available to satisfy claims of Class 7A-PI Opioid Claimants, Mr. Anderson will receive Plan

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the *Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors*, Endo ECF No. 3849 (the "Fourth Amended Plan," or the "Plan") or the *Findings of Fact, Conclusions of Law, and Order (i) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto*, Endo ECF No. 3960 (the "Confirmation Order"). References to documents filed on the electronic docket of Case No. 22-22549, are to "Endo ECF No. __". References to documents filed on the electronic docket of Case No. 22-22608, are to "Branded ECF No. __".

[3] The PI TDP are available at https://endopitrust.com/pi-opioid-claims/.

payments on account of the Claim and Non-GUC Release, aggregating well below the face amount of his Claim.

Mr. Anderson is not satisfied with his projected pay-out under the Plan. Since the Plan's Effective Date, in pleadings filed in this Court, including in two motions (the Motion to Modify Plan and the Motion to Compel Immediate Payment, collectively, the "Anderson Motions"), Mr. Anderson is seeking immediate payment of his Claim in full. The Court denied those demands essentially on the grounds that by application of principles of *res judicata*, Mr. Anderson is bound by the Plan and Confirmation Order. Mr. Anderson is appealing the orders denying the Anderson Motions to the District Court (the "Appeals").

Recently, Mr. Anderson redoubled his efforts to obtain preferential treatment of his Claim in these Chapter 11 Cases. He filed his Complaint commencing an adversary proceeding against the Plan Administrator, and others (the "Adversary Proceeding"),[4] in which, for substantially the same reasons cited in support of the Anderson Motions, he seeks to by-pass the Plan, and compel immediate payment of his Claim in full. The Adversary Proceeding is in its nascent stages. Contemporaneously with the filing of the Complaint, Mr. Anderson filed an application pursuant to 28 U.S.C. § 1915 to proceed *in forma pauperis* ("IFP") in the Adversary Proceeding (the "IFP Application"),[5] seeking leave to prosecute this adversary proceeding without payment of the $350 filing fee. The Court granted that application.[6]

---

[4] *See Anderson, Jr. v. Bartels, Jr. et al.,* Case No. 26-07005 (Bankr. S.D.N.Y) (the "Adversary Proceeding"). References to documents filed on the electronic docket of the Adversary Proceeding will be to "Branded AP ECF No. __".

[5] *See Application to Have Filing Fee Waived*, Branded AP ECF No. 3.

[6] *See Memo Endorsed Order Granting Application to Have Filing Fee Waived*, Branded AP ECF No. 7.

The Plan Administrator complains that Mr. Anderson refuses to acknowledge he is bound by the Plan and Confirmation Order. He asserts that in seeking payment of his Claim in full outside the Plan, Mr. Anderson is engaging in vexatious and bad faith litigation in support of claims for relief that are not grounded in fact or law. In the motion before the Court (the "Motion"),[7] Mr. Bartels, not individually but solely in his capacity as Plan Administrator for the Remaining Debtors, seeks an injunction barring Mr. Anderson from making additional filings in the Chapter 11 Cases without first obtaining leave from this Court to do so. The proposed injunction would stay prosecution of the Adversary Proceeding pending resolution of the Appeals, but does not extend to the matters pending in the District Court. Mr. Anderson is acting pro se. He filed an objection to the Motion (the "Objection" or "Obj.").[8] The Plan Administrator filed a reply to the Objection in support of the Motion (the "Reply").[9] The Court heard argument on the Motion.

Mr. Anderson is bound by the Plan and Confirmation Order; application of principles of *res judicata* forecloses his demands for preferential treatment of his Claim in these Chapter 11 Cases. Pursuant to section 105(a) of the Bankruptcy Code, the Court has the equitable power to enjoin the prosecution of vexatious litigation intended to harass litigants and interfere with the implementation of bankruptcy court orders. As explained below, the Plan Administrator has met his burden of demonstrating grounds for the entry of a narrowly-tailored injunction prohibiting Mr. Anderson from making additional filings in the Chapter 11 Cases without first obtaining leave

---

[7] *Motion Of The Plan Administrator For Issuance Of A Pre-Filing Injunction Against Charles Elliott Anderson, Jr.*, Branded ECF No. 332 (the "Motion").

[8] *Petitioner's Comprehensive Forensic Rebuttal To Plan Administrator's Motion For Pre-Filing Injunction [ECF No. 332] And Objection To The Proposed Order*, Branded ECF No. 333 (the "Objection" or "Obj.").

[9] *Plan Administrator's Reply In Support Of Motion For Issuance Of A Pre-Filing Injunction Against Charles Elliott Anderson, Jr.*, Branded ECF No. 334 (the "Reply").

of the Court to do so, and staying prosecution of the Adversary Proceeding pending resolution of the Appeals.

## BACKGROUND

### The Chapter 11 Cases

On August 16, 2022 (the "Petition Date"), Endo International plc and seventy-five of its affiliated Debtors each commenced voluntary chapter 11 cases in this Court (the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of the Bankruptcy Code. On May 25, 2023, and May 31, 2023, certain additional Debtors also commenced Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered.

### The Debtors' Plan

On March 22, 2024, the Court entered the Confirmation Order confirming the Fourth Amended Plan and on April 23, 2024, the Plan became effective (the "Effective Date").[10] The Plan calls for the appointment of a Plan Administrator on or after the Effective Date by the Debtors and on consent of the Required Consenting Global First Lien Creditors in consultation with the Committees and the Future Claims Representative. *See* Plan § 5.7. Mr. Bartels was appointed and is acting as Plan Administrator. The Plan also calls for the creation of the PI Trust and the appointment of the PI Trustee. *See id.* § 6.8. Mr. Gentle was appointed and is acting as PI Trustee.

### The Treatment Of Mr. Anderson's Claim Under The Plan

Mr. Anderson timely filed his notarized Personal Injury Opioid Proof of Claim in the Chapter 11 Cases. The Claim is classified under the Plan as a Class 7A-PI Opioid Claim. Under

---

[10] *Notice Of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) the Administrative Expense Claims Bar Date*, Endo ECF No. 4212.

the Plan distribution procedures, holders of Allowed Class 7A-PI Opioid Claims will be paid a

simple pro rata share of the distributable proceeds held by the PI Trust based on the total number

of timely Allowed PI Opioid Claims. *See* PI TDP § 4.3. The Plan also provides for consensual

third-party releases. The "Non-GUC Releases" are relevant herein. *See* Plan § 10.3.[11] The holders

of Allowed 7A-PI Opioid Claims who grant the Non-GUC Releases during the Voting Period will

receive an additional award that is calculated as four times the Distribution to be made to such

holder pursuant to the GUC Trust Document (the "Non-GUC Multiplier"). *Id.* § 4.14(d).[12]

On his ballot (the "Ballot"), Mr. Anderson voted to reject the Plan, but elected to grant the

Non-GUC Release by checking a box "to OPT IN to grant the Releases contained in Section 10.3

---

[11] In part, section 10.3 of the Plan states, as follows:

> (a) Notwithstanding anything contained in this Plan to the contrary, as of the Effective Date, and to the fullest extent allowed by applicable law, each Non-GUC Releasing Party is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Non-GUC Released Party from any and all Released Claims. . . .

Plan § 10.3(a). As relevant, in describing the "Effect of the Releases", the Plan states:

> (a) Holders of Trust Channeled Claims shall have the option to grant or opt out of granting, as applicable, the Non-GUC Releases or the GUC Releases, as applicable.

> (b) In addition to the amount of any Distribution to be provided by a Trust to a holder of an Allowed Trust Channeled Claim . . . that is a Non-GUC Releasing Party or a GUC Releasing Party, as applicable, such Non-GUC Releasing Party or GUC Releasing Party, as applicable, shall receive an additional payment in exchange for granting or being deemed to grant, as applicable, the Non-GUC Releases or the GUC Releases, as applicable.

*Id.* § 10.5. The term "Non-GUC Releasing Party" includes the holder of a PI Opioid Claim that votes to reject the Plan and opts in to grant the Non-GUC Releases. *See id.* §1.1.344.

[12] The Plan states, as follows:

> *Incremental Trust Distributions in Exchange for Granting Non-GUC Releases*. The procedures governing Distributions set forth in the PI Trust Documents shall provide for an additional payment by the PI Trust to any holder of an Allowed PI Opioid Claim who is entitled to receive a Distribution from the PI Trust and who grants or is deemed to grant, as applicable, the Non-GUC Releases. Such additional payment from the PI Trust shall be in exchange for such holder granting or being deemed to grant, as applicable, the Non-GUC Releases and shall be calculated by multiplying (i) the amount of any Distribution to be made to such holder pursuant to the PI Trust Documents, by (ii) a multiplier of 4x.

Plan § 4.14(d).

6

of the Plan to receive an additional payment." *See* Ballot.[13] Mr. Anderson did not object to confirmation of the Plan or entry of the Confirmation Order.

**In Response To Plan Administrator's Motion For Final Decree, Mr. Anderson Demands Payment Of His Claim In Full—The Court Rejects The Demand**

On October 17, 2024, the Plan Administrator filed a Motion for Final Decree,[14] seeking to close certain of the Chapter 11 Cases for procedural purposes only in accordance with the Fourth Amended Plan. On October 21, 2024, Mr. Anderson filed an objection to the motion (the "Final Decree Objection")[15] arguing that entry of final decrees in the Chapter 11 Cases would "unfairly prejudice [his] rights to seek "full compensation for [his] injuries'" and would "'approve[ ] a plan' to fund the Court, Lawyers, & Other 'shell companies,' and the different firms that 'sucked up' the funds, is a 'mis-carriage' of justice." *See* Final Decree Objection at 2, 4. He also argued that his Claim should be paid in full outside of the terms of the Plan. *Id.* at 5-7. On November 11, 2024, the Plan Administrator filed a reply in support of the Motion for Final Decree.[16]

---

[13] As relevant, the Ballot contains the following three rows: ACCEPT, REJECT and ABSTAIN. The "REJECT" row contains two boxes, that read, as follows:

> REJECT (vote AGAINST) the Plan and appoint the Chairperson as special proxy to vote against the Scheme at the relevant Scheme Meeting and any adjournment thereof.

> If you are voting to REJECT the Plan, check this box to OPT IN to grant the Releases contained in Section 10.3 of the Plan to receive an additional payment.

*See* Ballot. Mr. Anderson checked both boxes.

[14] *Motion for Entry of an Order (I) Closing Certain Chapter 11 Cases; (II) Granting Final Decrees in Certain Closed Chapter 11 Cases; (III) Amending Caption of Remaining Cases; and (IV) Granting Related Relief*, Case No. 22-22549, Endo ECF No. 4686 (the "Motion for Final Decree").

[15] *Objection to the Motion for Final Decree*, Endo ECF No. 4694 (the "Final Decree Objection").

[16] *Reply in Support of the Motion for Final Decree*, Endo ECF No. 4783.

After a hearing, the Court entered its Final Decree Decision[17] granting the Motion for Final Decree and overruling Mr. Anderson's Final Decree Objection. In so doing, the Court found that creditor claims (including Mr. Anderson's Claim) would be administered in the remaining Chapter 11 Cases "without prejudice to the rights of any creditor" and found "no grounds" to direct that the Claim be settled outside of the process set forth in the Fourth Amended Plan and Trust Documents. *See* Final Decree Decision at 12-13.

**Mr. Anderson Seeks To Modify The Plan To Compel Immediate Payment Of His Claim In Full—The Court Denies His Motion**

In the wake of the Court's rejection of Mr. Anderson's demand for full payment of his Claim outside the provisions of the Plan, on February 18, 2025, Mr. Anderson filed a motion to modify the Fourth Amended Plan to direct the immediate payment of $5 million, in full payment of his Claim (the "Motion to Modify Plan").[18]

The Plan Administrator[19] and PI Trustee[20] each objected to the motion. On March 18, 2025, Mr. Anderson filed a single response to both objections.[21] On March 30, 2025, the Court denied the motion. *See* Decision on Motion to Modify Plan.[22] The Court found that, even construing Mr. Anderson's *pro se* pleadings liberally and interpreting them to raise the strongest arguments they

---

[17] *Memorandum Decision Granting Motion for Entry of an Order (I) Closing Certain Chapter 11 Cases; (II) Granting Final Decrees in Certain Closed Chapter 11 Cases; (III) Amending Caption of Remaining Cases; and (IV) Granting Related Relief*, Endo ECF No. 4786 (the "Final Decree Decision").

[18] *See Motion for Modification of the Plan of Reorganization and for Equitable Relief*, Branded ECF No. 56 (the "Motion to Modify Plan").

[19] *Plan Administrator's Objection to Motion to Modify Plan*, Branded ECF No. 59.

[20] *Personal Injury Trustee's Response to Charles Elliott Anderson Jr.'s Motion for Modification of the Plan*, Branded ECF No. 60.

[21] *Response of Charles Elliott Anderson Jr. to Objections*, Branded ECF No. 63.

[22] *Memorandum Decision Denying Motion for Entry of an Order Modifying the Plan of Reorganization*, Branded ECF No. 69 (the "Decision on Motion to Modify Plan").

suggested, Mr. Anderson was not entitled to the relief he sought. *See id.* at 11. Without limitation, the Court reasoned that, (i) the Confirmation Order is a final, non-appealable order; (ii) pursuant to section 1141(a) of the Bankruptcy Code, the Plan is a contract binding on Mr. Anderson, notwithstanding that he voted to reject the Plan; (iii) Mr. Anderson lacks standing to modify the Plan as he is not a Plan proponent; (iv) Mr. Anderson is time-barred from seeking to revoke the Confirmation Order under section 1144 of the Bankruptcy Code; and (v) section 105(a) of the Bankruptcy Code provides no grounds for relief. *Id.* at 11-16.

On April 8, 2025, Mr. Anderson filed his Motion for Reconsideration[23] of that order. The Plan Administrator and PI Trustee each filed an objection to the motion.[24] Following a hearing, on May 25, 2025, the Court denied the motion. *See* Decision on Motion for Reconsideration.[25]

**Mr. Anderson Appeals Decision Rejecting Motion To Modify Plan**

By letter dated May 30, 2025 (the "PI Trustee Letter") the PI Trustee notified Mr. Anderson that he is deemed to have an Allowed PI Opioid Claim and that he timely granted the Non-GUC Release. Under the PI TDP, Allowed claims are "eligible to receive payment from the PI Trust." PI TDP § 3.1(b). The Trustee advised Mr. Anderson that under the Plan, on account of the Claim, he will receive both a Pro Rata Payment and Additional Award (on account of the Non-GUC Multiplier) resulting in an estimated Award of $1,950 gross and $1,620 net in satisfaction of his Claim. PI Trustee Letter at 2.[26]

---

[23] *Motion for Reconsideration of Order Denying Motion to Modify Plan of Reorganization*, Branded ECF No. 72 (the "Motion for Reconsideration").

[24] *Plan Administrator's Objection to Motion for Reconsideration*, Branded ECF No. 113; *Response Brief In Opposition to Plan Administrator's Objection and PI Trustee's Response*, Branded ECF No. 116.

[25] *Memorandum Decision and Order Denying Motion for Reconsideration*, Branded ECF No. 124 (the "Decision on Motion for Reconsideration").

[26] The PI Trustee explained that—

On June 4, 2025, Mr. Anderson filed a notice of appeal of the Decision on Motion for Reconsideration.[27] The appeal (the "First Appeal")[28] is pending before the United States District Court for the Southern District of New York (the "District Court").

### *Mr. Anderson Requests Extension Of Time To File His Appellate Brief*

On July 11, 2025, Mr. Anderson filed a motion seeking to extend his time to file his brief in support of the First Appeal (the "Appellate Brief").[29] On July 21, 2025, the District Court granted the relief, and fixed October 16, 2025, as the last day upon which Mr. Anderson could submit his Appellate Brief.[30]

### *Mr. Anderson Seeks Discovery In Support Of The First Appeal*

On July 3, 2025, in support of his First Appeal, Mr. Anderson filed a Motion to Compel Discovery.[31] On July 30, 2025, the PI Trustee and Plan Administrator each objected to the motion.[32] On August 21, 2025, the District Court denied the motion.[33]

---

The estimated net amounts reflected are calculated based on the estimated gross amount minus administration fees. You[r] award may be further reduced by common benefit fees, medical liens (if applicable), and attorney's fees and/or case expenses (if you have an attorney).

PI Trustee Letter at 2.

[27] *See Notice of Appeal*, Branded ECF No. 128.

[28] *See In Re Branded Operations Holdings, Inc.*, Case No. 7:25-cv-05045 (S.D.N.Y) (the "First Appeal"). References to "District Court ECF No. __" are to documents filed on the electronic docket of the First Appeal.

[29] *See Motion for Reconsideration of Briefing Schedule and Request for Extension of Time to File Appellate Brief*, District Court ECF No. 10.

[30] *See Memo Endorsement Granting Motion for Reconsideration*, District Court ECF No. 13.

[31] *Motion to Compel Discovery: Exposing the Scheme to Defraud Allowed Claimants and Subvert Justice*, District Court ECF No. 7 (the "Motion to Compel Discovery").

[32] *Response in Opposition to Motion to Compel,* District Court ECF No. 16; *Response to Motion to Compel (Corrected)*, District Court ECF No. 18.

[33] *See Order Denying Motion to Compel*, District Court ECF No. 21.

*Mr. Anderson Litigates Scope Of Record On Appeal*

On August 2, 2025, Mr. Anderson filed his Designation of Record On Appeal.[34] On August 18, 2025, the Plan Administrator and PI Trustee jointly filed the Appellees' Counter-Statement,[35] and Appellees' Motion to Strike.[36] Mr. Anderson filed an objection to those pleadings.[37] The Plan Administrator and PI Trustee jointly filed a reply to the objection.[38]

After a hearing on September 18, 2025, the Court issued a decision granting the Appellees' Motion to Strike,[39] and on October 3, 2025, the Court entered the order granting the motion.[40] On November 3, 2025, the Record On Appeal was docketed with the District Court.[41]

*Mr. Anderson Requests Additional Extensions Of Time To File His Appellate Brief*

On October 16, 2025, Mr. Anderson filed a motion in the District Court to further extend his time to file his Appellate Brief.[42] The District Court granted the motion, and extended the deadline to December 15, 2025.[43]

---

[34] *See Appellant's Designation of Record on Appeal: The Irrefutable Money Trail of Fraud on the Court and the American People*, Branded ECF No. 190.

[35] *Appellees' Joint Counter-Statement of Issues and Designation of Record on Appeal*, Branded ECF No. 198.

[36] *See Appellees' Motion to Strike Certain Items from Appellant's Designation of the Record on Appeal*, Branded ECF No. 199 (the "Appellees' Motion to Strike").

[37] *See Appellant's Objection to Appellees' Motion to Strike, Judicial Notification of Fraud on the Court, Creditor Demand for Payment of Allowed Claim as Liquidated Debt and Motion for Surcharge and Removal of Fraudulent Fiduciaries*, Branded ECF No. 220.

[38] *Appellees' Reply to Appellant's Objection to Appellees' Motion to Strike Certain Items from Appellant's Designation of the Record on Appeal*, Branded ECF No. 222.

[39] *See Memorandum Decision Granting the Appellees' Motion to Strike Certain Items from Appellant's Designation of the Record on Appeal*, Branded ECF No. 232.

[40] *See Order Granting Motion to Strike*, Branded ECF No. 237.

[41] *See Notice of Record of Appeal Availability (Completion)*, District Court ECF No. 24.

[42] *See Petitioner's Motion for Extension of Time to File Appellate Brief and Request for Hearing*, District Court ECF No. 22.

[43] *See Order Granting Motion for Extension of Time*, District Court ECF No. 23.

11

On December 15, 2025, Mr. Anderson filed his Emergency Motion for Enlargement of Time in the District Court.[44] On December 17, 2025, the Plan Administrator opposed the motion.[45] On December 17, 2025, the District Court directed Mr. Anderson to file his Appellate Brief "as soon as possible and no later than January 9, 2026."[46]

### *Mr. Anderson Requests Production Of Transcripts*

On December 19, 2025, Mr. Anderson filed his Motion to Produce Transcripts.[47] On December 29, 2025, the Plan Administrator opposed the motion.[48]

### *Mr. Anderson Requests Additional Extensions Of Time To File His Appellate Brief*

On February 9, 2026, over a month after his Appellate Brief was due, Mr. Anderson filed his Further Motion for Enlargement of Time in which to file the brief.[49] He filed an identical motion on February 11, 2026.[50]

On February 12, 2026, the District Court directed Mr. Anderson to file his Appellate Brief "as soon as possible and no later than March 9, 2026" and noted that "no further extensions will be granted."[51]

---

[44] *See Emergency Motion for Enlargement of Time and Judicial Notice of "Fraus in Curiam" (Fraud on the Court): The "Wizard of Oz" Scheme*, District Court ECF No. 26 (the "Emergency Motion for Enlargement of Time").

[45] *See Response in Opposition to Motion for Extension of Time*, District Court ECF No. 27.

[46] *See Order Directing Filing of Appellate Brief*, District Court ECF No. 28.

[47] *See Motion for Production of Transcripts at Government Expense Under IFP Status; Motion to Suspend Briefing Deadline due to Administrative Spoliation; Notice of Hostile Fiduciaries; and Request to Accept "Clean Record"*, District Court ECF No. 29 (the "Motion to Produce Transcripts").

[48] *See Response in Opposition to Motion to Produce*, District Court ECF No. 30.

[49] *See Emergency Motion for Enlargement of Time and Judicial Notice of "Fraus in Curiam" (Fraud on the Court): The "Wizard of Oz" Scheme*, District Court ECF No. 31 ("Further Motion for Enlargement of Time").

[50] *See Motion for Extension of Time*, District Court ECF No. 32.

[51] *See Order Granting Motion for Extension of Time*, District Court ECF No. 35.

**Notwithstanding Pendency Of First Appeal—Mr. Anderson Seeks To Compel Full Payment Of Claim—The Court Denies Motion**

On November 12, 2025, notwithstanding the Court's denial of the Motion to Modify Plan, and the pendency of the First Appeal, Mr. Anderson filed another motion seeking relief from the provisions of the Plan and Confirmation Order, and to compel immediate payment of his Claim in full. *See* Motion to Compel Immediate Payment at 18.[52] He also asked the Court to declare that the Non-GUC Release is unconstitutional and unenforceable. Without limitation, he argued it is a "legal nullity" because it runs afoul of *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204 (2024). *Id.*

On December 10, 2025, the Plan Administrator and PI Trustee filed a joint objection to the motion.[53] On December 16, 2025, Mr. Anderson filed a response in support of his motion.[54] On December 18, 2025, Mr. Anderson filed a supplement to the motion.[55] After a hearing on December 17, 2025, this Court denied the motion. *See* Decision on Motion to Compel Immediate Payment.[56] In that decision, the Court "caution[ed] [Mr. Anderson] against filing meritless litigation in these Chapter 11 Cases." *See id.* at 26.

---

[52] *See Motion of Charles Elliott Anderson Jr. for Entry of an Order (I) Compelling Immediate Payment of Deemed Allowed and Liquidated Claim; (II) Declaring Third-Party Releases Unenforceable as Applied to Movant; (III) Staying Pending Appeal; and (IV) Requesting an Evidentiary Hearing*, Branded ECF No. 277 (the "Motion to Compel Immediate Payment").

[53] *See Joint Objection to the Motion to Compel Immediate Payment*, Branded ECF No. 285.

[54] *See Response in Opposition to Joint Objection of Plan Administrator and PI Trustee and Reply in Support of Motion to Compel Payment*, Branded ECF No. 288.

[55] *See Emergency Supplemental Memorandum Of Law Nunc Pro Tunc To December 17 Hearing; Notice of Deceptive Inducement Regarding Exhibit I; And Renewed Request For Indicative Ruling*, Branded ECF No. 290.

[56] *See Memorandum Decision and Order Denying Motion*, Branded ECF No. 296 (the "Decision on Motion to Compel Immediate Payment").

**Mr. Anderson Files Appeal Of Denial Of Motion To Compel Immediate Payment**

On January 16, 2026, Mr. Anderson filed a notice of appeal of the Decision on Motion to Compel Immediate Payment.[57] The appeal is pending before the District Court (the "Second Appeal").[58] On February 9, 2026, Mr. Anderson filed his Emergency Omnibus Motion[59] and Motion to Consolidate[60] in the District Court, seeking to consolidate the Second Appeal into the First Appeal.[61]

**Mr. Anderson Commences The Adversary Proceeding To Revoke The Confirmation And Closing Orders, Recover Damages And Obtain Other Miscellaneous Relief**

On January 21, 2026, Mr. Anderson commenced the Adversary Proceeding by filing a complaint (the "Complaint" or "Complt")[62] against Patrick J. Bartels, Jr., Edgar C. Gentle III, Ad Hoc First Lien Creditor Group (Golden Tree/Silver Point), Roger Frankel, Arik Preis and Matthew J. Maletta.

Mr. Anderson says he filed his so-called "Master Complaint" commencing the Adversary Proceeding as "a formal prosecutorial indictment of the Chapter 11 proceedings of Endo International plc." Complt. at 4. He describes the Chapter 11 Cases as "a coordinated, multi-year scheme of Extrinsic Fraud (fraus in curiam)"—which he identifies as "Project Sentinel"—that

---

[57] *See Notice of Appeal*, Branded ECF No. 298.

[58] *See In Re Branded Operations Holdings, Inc.*, Case No. 7:26-cv-01033 (S.D.N.Y.) (the "Second Appeal"). References to "District Court II ECF No. __" are to documents filed on the electronic docket of the Second Appeal.

[59] *See Appellant's Emergency Omnibus Motion for Recognition of ADA Rights, Stay of Proceedings, and Consolidation of Related Appeals*, District Court II ECF No. 3 (the "Emergency Omnibus Motion").

[60] *See Notice of Related Case and Motion to Transfer and Consolidate*, District Court II ECF No. 4 (the "Motion to Consolidate").

[61] Mr. Anderson also filed the Motion to Consolidate on the docket of the First Appeal. *See Motion to Transfer Case and Motion to Consolidate Cases*, District Court ECF No. 34.

[62] *See* Verified Omnibus Master Adversary Complaint To Vacate Confirmation Order [ECF No. 3960] And Closing Order [ECF No. 276] For Systemic Fraud On The Court (Rule 60(d)(3)], Bad Faith Venue Shopping, Extrinsic Fraud, And Breach Of Contract, Branded AP ECF No. 1 (the "Complaint" or "Complt").

"was designed to orchestrate the theft of over $10 Billion in enterprise value." *Id.* He asserts the scheme "intentionally devalued opioid victims through a fraudulent 4x Multiplier ($25,000,000.00) inducement while insiders enriched themselves through undisclosed interlocking directorates, lucrative board seats, and luxury acquisitions, including an $8.9 Million private jet." *Id.* He contends Debtors "utilized the 'Malvern Nest' command center to launder assets through a global web of 76 shell entities," and that on August 15, 2022 (the day before the Petition Date), and Debtors authorized three separate transfers aggregating $1.5 billion, to debtor Hawk Acquisition Ireland Limited (Case No. 22-22611). *Id.*

Mr. Anderson seeks to revoke the Confirmation Order and Closing Order pursuant to Rule 60(d)(3) of the Federal Rules of Civil Procedure ("Rule 60(d)(3)") based on Debtors' alleged "fraud on the court." *Id.* at 8. He contends there is "incontrovertible" forensic evidence that the Confirmation Order and Closing Order are void *ab initio. Id.* at 4. As support, Mr. Anderson points to Debtors' alleged "bad faith venue selection," in filing the Chapter 11 Cases in the Southern District of New York, instead of the District of Delaware, and complains that the Non-GUC Releases "are textually identical to those struck down in *Harrington v. Purdue Pharma* L.P. (2024)," and "[u]nder this precedent, the Court lacked subject matter jurisdiction to grant these releases." *Id.* at 5. He also points to the following so-called "Articles of Fraud":

> A. Debtors' personnel intentionally excluded $8.05 Billion Par Pharmaceutical value from the estate using a pre-petition Special Purpose Vehicle (SPV). *Id.*
>
> B. The Plan Administrator "utilize[d] undisclosed interlocking directorates to facilitate a Quid Pro Quo asset wash and personal luxury enrichment." *Id.* at 6.
>
> C. The Future Claims Representative and certain retained counsel in the Chapter 11 Cases had disqualifying conflicts of interest. *Id.*
>
> D. The Debtors' board of directors had a documented history of discovery destruction and asset concealment. *Id.* at 7.

15

E. The Debtors lied about their operational status to manufacture insolvency. *Id.*

F. The Clerk of the Court docketed the Adversary Proceeding under the false label of "Motion to Approve." *Id.* at 8.

In part, Mr. Anderson bases his claims for relief under the Articles of Fraud, on the Defendants' alleged violations of the following criminal statutes: 18 U.S.C. § 152 (Concealment of Assets); 18 U.S.C. § 152(6) (Bribery/Fee Fixing); 18 U.S.C. § 157 (Bankruptcy Fraud); 18 U.S.C. § 1512 (Obstruction of Justice); 18 U.S.C. § 1621 (Perjury). *Id.* at 7-8. He also purports to assert claims under section 548 of the Bankruptcy Code, 11 U.S.C. § 548, and section 8 of the Clayton Act, 15 U.S.C. §19. *Id.* at 5-6. And he seeks (i) the appointment of an Independent Forensic Examiner "to audit the $21.8 Billion Luxembourg Solvency, and $4 Billion asset withholding," (ii) a judgment in the amount of $25 million for breach of contract/inducement, and (iii) the disgorgement of all professional fees paid to the Plan Administrator, Skadden Arps and Akin Gump, for undisclosed conflicts. *Id.* at 8.

The Defendants have not responded to the Complaint. By memorandum endorsed order (the "Memo Endorsed Order"),[63] the Court extended their time to respond to the Complaint to the date that is five days after the Court enters an order resolving the Motion.

**The Motion**

The Plan Administrator complains that since the Effective Date, Mr. Anderson has engaged in a campaign of increasingly frivolous filings that, in varying ways, seek to relitigate matters concerning the allowance and payment of his Claim that were conclusively decided by this Court in the Confirmation Order. Motion ¶ 1. He says that to compel payment in full of his Claim, Mr. Anderson has filed serial motions, noticed multiple appeals, and initiated a meritless adversary

---

[63] *Memorandum Endorsed Order*, Branded AP ECF No. 16 (the "Memo Endorsed Order").

proceeding against the Plan Administrator and others effectively seeking the same relief. *Id.* ¶ 1-2. He complains Mr. Anderson's papers include baseless accusations of fraud or other wrongdoing against Chapter 11 Case professionals, the fiduciaries appointed to administer the Fourth Amended Plan and the claims trusts established thereunder, and this Court and its staff. *Id.* ¶ 1. He asserts those filings have hindered and are continuing to impair the efficient administration of the Chapter 11 Cases, and they are obstructing implementation of the Fourth Amended Plan. *Id.* ¶ 1-2.

The Plan Administrator argues that Mr. Anderson's repetitive frivolous requests for relief have generated needless cost and delay, and diverted resources from the implementation of the Fourth Amended Plan, which is necessary to bring finality to the numerous stakeholders in these cases who supported, and overwhelmingly voted to approve, the Plan. He contends that under these circumstances, an injunction barring Mr. Anderson from filing new pleadings, motions, discovery requests, adversary proceedings, or other documents in the Chapter 11 Cases and the Adversary Proceeding without first seeking and obtaining leave from this Court is warranted. Motion ¶ 35.

**<u>The Objection</u>**

The Objection does not address the merits of the Motion. As preliminary matters, Mr. Anderson contends (i) the Plan Administrator is judicially estopped from seeking injunctive relief, and (ii) due to so-called "Administrative Irregularities" the Court should strike the hearing date for the Motion. Obj. §§ II, III, VIII. Also, he contends he is a "qualified individual" under the Americans with Disabilities Act ("ADA") and, as a "reasonable accommodation," he is entitled to a stay of all deadlines in the Chapter 11 Cases, to allow for a forensic audit of the Debtors. *Id.* § IX.

However, mostly, the Objection is a meritless collateral attack on the Plan and Confirmation Order. Mr. Anderson contends "[t]he Plan was procured by Extrinsic Fraud, and the

17

intrinsic meaning of [his] adversarial investigation into a $75 multi-billion dollar macro-theft and unmasks the [Plan Administrator's] attempt to use the judicial machinery as a 'Cat's Paw' to silence the truth." *Id.* at 2. He asserts "his unique standing as the 'Last Aggrieved Creditor Standing'" to challenge the integrity of a proceeding currently shielded by fiduciary capture and administrative spoliation." *Id.* In broad strokes, Mr. Anderson argues that the Debtors defrauded their creditors in the Chapter 11 Cases because (i) Debtors were not insolvent on the Petition Date (*id.* § I), (ii) Debtors improperly shielded assets from their creditors (*id.* §§ IV-VI), and (iii) professionals retained by fiduciaries in the Chapter 11 Cases had disabling conflicts (*id.* § VII).

To summarize, Mr. Anderson asks the Court to (i) deny the Motion, with prejudice, (ii) strike the hearing date of February 26, 2026, and (iii) recognize his alleged "ADA/TBI status" as the "Last Aggrieved Creditor Standing." *Id.* § XI.

**<u>The Reply</u>**

The Plan Administrator denies that the Objection provides any basis to contest the relief sought in the Motion. Reply ¶ 1. He contends the Motion was filed on proper notice to Mr. Anderson and set for hearing in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). He also contends that the Plan vests him with standing to pursue the Motion. *Id.* ¶¶ 1, 3. On the merits, the Plan Administrator asserts that Mr. Anderson offers no legal arguments or factual basis demonstrating that the Court should deny the relief sought in the Motion. He contends the issues raised by Mr. Anderson have no bearing on the Motion. *Id.* ¶¶ 2 - 3.

**DISCUSSION**

**The Plan Administrator's Request For Injunctive Relief**

***Mr. Anderson Fails To Demonstrate "Administrative Irregularities" With The Motion***

As an initial matter, there is no merit to Mr. Anderson's assertion that "Administrative Irregularities" mar the Motion. The Plan Administrator filed the Motion on proper notice to Mr. Anderson, and set the hearing in accordance with the Bankruptcy Rules and this Court's procedures.[64] The Court rejects Mr. Anderson's assertion that the Court should strike the February 26, 2026 hearing. *See* Obj. at 7.

***The Plan Administrator Has Standing To Bring The Motion***

Nor is there merit to Mr. Anderson's contention that the Plan Administrator lacks standing to bring the Motion and that he is judicially estopped from arguing otherwise. Obj. at 4. Mr. Anderson says in correspondence with him, the Plan Administrator's counsel advised that the Plan Administrator "is not responsible for the adjudication of your claims and therefore has 'NO AUTHORITY' to settle or otherwise resolve your claim." *Id.* (citation omitted). He asserts the Court confirmed that limitation when it stated the Plan Administrator is responsible strictly for "Administrative Expense Claims, Non-IRS Priority Tax Claims, and Priority Non-Tax Claims." *Id.* (citation omitted). He maintains that under the Plan, the PI Trustee holds "exclusive authority" over his claim and that the PI Trustee did not join in the Motion, and argues under the "doctrine of Admission by Silence," the PI Trustee's refusal to join in the Motion constitutes a judicial admission that the Plan Administrator's assertions are moot. *Id.*

---

[64] Hearing dates are provided by the Court and were noticed on the docket on January 5, 2026. *See Notice of Scheduling of Omnibus Hearing Dates*, Branded ECF 294.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that is successfully advanced in another proceeding." *BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017) (quoting *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004)). Accordingly, in this circuit, to invoke judicial estoppel, "(1) the party against whom it is asserted must have advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position must have been adopted by the court in some matter." *Peralta v. Vasquez,* 467 F.3d 98, 105 (2d Cir. 2006) (citations omitted); *accord Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005) (citations omitted). The doctrine of judicial estoppel requires "a true inconsistency between the statements in the two proceedings." *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72-73 (2d Cir. 1997).

Judicial estoppel has no application to the Motion. The Plan Administrator is not taking any position with respect to the allowance, disallowance, or payment of the Claim, let alone one that contradicts the position he took in a prior proceeding. There is no inconsistency between the Plan Administrator's prior acknowledgment that adjudication and payment of Mr. Anderson's Claim falls within the province of the PI Trustee, on the one hand, and the Plan Administrator's present request for relief to protect the orderly administration of these Chapter 11 Cases from vexatious filings, on the other. The Motion does not seek to adjudicate, settle, or otherwise resolve the Claim;[65] it seeks to prevent the continued filing of duplicative and meritless pleadings that burden the estates, the courts, and parties in interest.[66]

---

[65] Indeed, the PI Trustee has acknowledged that Mr. Anderson holds an allowed claim under the Plan. *See* PI Trustee Letter at 2.

[66] Mr. Anderson misplaces his reliance on *New Hampshire v. Maine*, 532 U.S. 742 (2001) in support of the Objection. *See* Obj. at 4. There, the Supreme Court applied judicial estoppel to bar New Hampshire from asserting a

Finally, the Plan vests the Plan Administrator with the authority to take all actions necessary or desirable to carry out the purposes of the Plan. *See* Plan § 5.7(d). This plainly includes utilizing the authority under section 105(a) of the Bankruptcy Code to seek a filing injunction consistent with the Bankruptcy Code. *See* 11 U.S.C. § 105(a); *Buczek v. Nationstar Mortg. LLC (In re Buczek)*, No. 22-1920, 2023 WL 6618901, at *3 (2d Cir. Oct. 11, 2023) (summary order). Mr. Anderson is bound by the terms of the Plan and is barred from collaterally attacking it.

### Mr. Anderson Is Not Entitled To Requested Accommodations Under The ADA

In the Omnibus Motion, Mr. Anderson requested (i) judicial notice of a cognitive disability under the Americans with Disabilities Act (the "ADA"), and (ii) restoration of his access to PACER, which he stated was blocked due to an outstanding debt from an unrelated prior matter. *See* Omnibus Motion at 2, 4. In the Objection, he reiterates his request for relief under the ADA. He contends he is a "Qualified Individual" under the ADA entitled to "reasonable modifications -- specifically, a stay of deadlines to allow for a forensic audit." In support, he cites *Tudor v. Whitehall*, 132 F.4th 242 (2d Cir. 2025). Obj. at 4.

Assuming, *arguendo*, that Mr. Anderson is a Qualified Individual under the ADA, there is no merit to his requests for relief in the Objection and Omnibus Motion. In *Tudor*, the Second

---

boundary position that was "clearly inconsistent" with a position it had successfully advanced in prior litigation before the same Court, where the Court had accepted that earlier position and New Hampshire had benefited from it. *Id.* at 750-51. The Court identified several factors typically informing the application of judicial estoppel: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, such that acceptance of the inconsistent position would create the perception that either the first or second court was misled; and (3) whether the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped. *Id.* None of those factors is satisfied here. The Plan Administrator's prior acknowledgment that he lacks authority to adjudicate or settle Mr. Anderson's personal injury claim—which falls within the province of the PI Trustee—is not inconsistent with its present request for a pre-filing injunction to protect the orderly administration of these Chapter 11 Cases. The former concerns the merits and payment of a specific claim; the latter concerns the prevention of abuse of process—authority expressly conferred on the Plan Administrator under section 5.7(d) of the Fourth Amended Plan and section 105(a) of the Bankruptcy Code. No court has been "persuaded" to accept a position that the Plan Administrator now contradicts, and the Plan Administrator derives no "unfair advantage" from seeking to restrain vexatious filings. Accordingly, *New Hampshire v. Maine* does not support Mr. Anderson's judicial estoppel argument.

Circuit addressed the narrow question of whether an employee's ability to perform the essential functions of her job without a reasonable accommodation is, by itself, fatal to a failure-to-accommodate claim under the ADA. The court held that it is not, because the ADA defines a "qualified individual" as one who can perform those functions "with or without reasonable accommodation." *Id.* at 246-47. *Tudor* concerned an employer's obligation under Title I of the ADA to provide a workplace accommodation to an employee; it has no application to the procedural obligations of a litigant in federal court. The ADA does not entitle a litigant to exemption from compliance with relevant procedural rules or deadlines. *See Kirkland v. FedEx Express Corp.*, No. 24-6825, 2026 WL 25021, at *1 (S.D.N.Y. Jan. 5, 2026) ("The ADA does not provide a basis for excusing a pro se litigant from compliance with relevant procedural rules or deadlines."). To the extent Mr. Anderson seeks a stay of the service deadline, that request is apparently moot. Mr. Anderson represents that he served the Second Summons and Notice of Pretrial Conference on the Defendants in the Adversary Proceeding on February 12, 2026. *See* Certificate of Service, Branded AP ECF No. 11. As to restoration of PACER access, Mr. Anderson's account is blocked due to an outstanding $55.00 debt from an unrelated matter. This is an administrative billing matter with the PACER Service Center, and this Court has no authority under the ADA to waive or override fees imposed by that entity. *See Lipton v. New York Univ. Coll. of Dentistry*, 865 F. Supp. 2d 403, 410 (S.D.N.Y. 2012), *aff'd*, 507 F. App'x 10 (2d Cir. 2013) ("The ADA cannot be read to mandate a waiver of fees in the present case, where the fees have no bearing on the disability alleged."); *see also Billups v. West*, No. 95-1146, 1997 WL 100798, at *7 (S.D.N.Y. Mar. 6, 1997) ("Although plaintiff is proceeding in forma pauperis, and the Court thereby waives his filing fee, his status does not excuse him from all other litigation costs

that a party must bear."). The Court denies Mr. Anderson's requests for accommodations under the ADA.

***The Plan Administrator Has Demonstrated Grounds For Injunctive Relief***

It is settled that "[f]ederal courts have the inherent authority to sanction improper litigation conduct, including issuing pre-filing restrictions—i.e., enjoining future filings without leave of the court." *Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191, 206 (Bankr. E.D.N.Y. 2017) (entering order prohibiting litigant from commencing further litigation to challenge prior state court foreclosure judgment). Indeed, "[t]he district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh,* 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks and citation omitted); *see also Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (internal quotation marks and citation omitted)). And "[j]ust as '[f]ederal courts have a responsibility to protect themselves from abuse' and have 'ample authority to do so by restricting the ability of abusive litigants to file,' so do '[b]ankruptcy courts' through "11 U.S.C. § 105(a).'" *Fauley v. Rescap Liquidating Tr. (In re Residential Capital, LLC)*, No. 12-12020, 2022 WL 970445, at *5-6 (S.D.N.Y. Mar. 30, 2022) (quoting *In re Meltzer*, 535 B.R. 803, 820-21 (Bankr. N.D. Ill. 2015)).

Under Section 105(a), a bankruptcy court

> may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or

23

> appropriate to enforce of implement court orders or rules, or to prevent an abuse
> of process.

11 U.S.C. § 105(a). This section grants broad equitable powers to bankruptcy courts, though the powers must be exercised in accordance with the Bankruptcy Code. "The equitable power conferred . . . by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing. This language suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." *In re Smart World Techs., LLC*, 423 F.3d 166, 184 (2d Cir. 2005) (quoting *New Eng. Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003) (internal quotation marks and citations omitted)). The Plan Administrator meets that standard, as "it is in accordance with the Bankruptcy Code to issue an injunction that enables the bankruptcy court's orders to be meaningful, rather than continually thwarted by frivolous filings aimed at preventing the implementation of the bankruptcy court's orders and harassing litigants." *Deep v. Danaher*, 393 B.R. 51, 54-55 (N.D.N.Y. 2008) (internal quotation marks omitted) (affirming bankruptcy court's pre-filing injunction).

Central to the Court's assessment of whether cause exists to issue a pre-filing injunction is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). The following factors are relevant to that analysis:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has

posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id. Accord Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (applying *Safir* factors) (per curiam).

The Plan Administrator contends application of the *Safir* factors supports the issuance of a pre-filing injunction because Mr. Anderson (i) has engaged in a sustained pattern of vexatious, harassing, and duplicative litigation, (ii) lacks any objective, good-faith expectation of prevailing in light of the final, non-appealable Confirmation Order, (iii) has imposed substantial and unnecessary expense on the Plan Administrator, PI Trustee, and the courts, and (iv) has demonstrated that lesser sanctions and warnings from this Court are inadequate in deterring further meritless filings. The Plan Administrator also contends that although proceeding *pro se*, Mr. Anderson is not shielded from reasonable, narrowly tailored filing restrictions to prevent abuse of the judicial process. The Court considers those matters below.

**Mr. Anderson Has Engaged in Vexatious Litigation**

Mr. Anderson refuses to accept that the Confirmation Order is final and binding on him. He is engaged in vexatious, harassing, and duplicative litigation in this Court, in a bad faith effort to obtain full payment of his Claim outside the Plan. In the Final Decree Objection, and the Motion to Modify Plan and Motion to Compel Immediate Payment, Mr. Anderson unsuccessfully sought to that relief. Sixteen days after the Court denied Mr. Anderson's Motion to Compel Immediate Payment, and cautioned him against filing meritless litigation in these Chapter 11 Cases, Mr. Anderson commenced the Adversary Proceeding seeking the same relief, repackaged under labels such as "fraud on the court," "extrinsic fraud," and "breach of contract."

Concurrently, in the District Court, Mr. Anderson has sought discovery in support of the First Appeal that was denied, litigated the Record on Appeal, and obtained four extensions of time

25

to file his Appellate Brief—a brief that, as of the date of this Memorandum Decision and Order, remains unfiled nine months after the First Appeal was noticed. He has also filed a Second Appeal and an Emergency Omnibus Motion seeking, among other things, another stay of all deadlines.

Mr. Anderson's serial motions, multiple appeals, and Adversary Proceeding, raise variations of the same core grievance, and constitute precisely the type of vexatious, harassing, and duplicative litigation that the first *Safir* factor is designed to identify. The first factor weighs in favor of a pre-filing injunction.

## Mr. Anderson Does Not Have A Good Faith Expectation Of Prevailing

So does the second *Safir* factor. In rejecting the Anderson Motions, the Court held that the Plan is binding on all creditors, including Mr. Anderson, and that the Confirmation Order is a final, non-appealable order. *See* Decision on Motion to Modify Plan at 12; Decision on Motion to Compel Immediate Payment at 2. At their core, the Anderson Motions and Adversary Proceeding seek the same relief: a determination that Mr. Anderson is not bound by the Plan and Confirmation Order, and is entitled to full payment of his Claim. Mr. Anderson does not have a good faith expectation of prevailing on that argument because the Confirmation Order is a final order and application of the doctrine of *res judicata* precludes the relief he is seeking.

The doctrine of *res judicata*, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties from "relitigating issues that were or could have been raised in that action." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017). "*Res judicata* applies with equal force to final judgments rendered by the bankruptcy courts and thus precludes relitigation in another bankruptcy proceeding and in other proceedings before Federal and State Courts." *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2024 WL 1298086, at *11 (Bankr. S.D.N.Y. Mar. 26, 2024). Indeed, "[w]hen a bankruptcy court enters a confirmation order,

26

it renders a final judgment, which, like any other final judgment, has *res judicata* effect, bar[ring] all challenges to the plan that could have been raised. Challengers must instead raise any issues beforehand and by objecting to confirmation." *Wyse v. Metropolitan Comm'l Bank*, No. 24-9108, 2025 WL 2208161, at *7 (S.D.N.Y. Aug. 4, 2025) (internal quotation marks and citation omitted).

Mr. Anderson did not object to the Plan, despite having had the opportunity to do so. He is bound by the Plan. In light of this Court's rulings and *res judicata* principles, Mr. Anderson cannot claim an objective, good-faith expectation of prevailing on his arguments to the contrary. *See Ditech,* 2024 WL 1298086, at *15 (holding "[c]laimant cannot have a reasonable, good faith expectation of prevailing on her claims" and holding filing injunction warranted where claimant had a history of vexatious litigation concerning her claim and claim was barred by *res judicata* where issues had already been litigated in state court); *see also Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191, 207 (Bankr. E.D.N.Y. 2017) (issuing a filing injunction against litigant who had engaged in clear litigious and vexatious conduct in connection with multiple year-long attempts to interfere with lawful exercise of rights and remedies for which the doctrine of *res judicata* barred relitigation).

## Mr. Anderson Has Caused Needless Expense and Burdened This Court

Mr. Anderson continues to file frivolous and vexatious pleadings, causing needless expense to the Plan Administrator, the PI Trustee, and other parties in this case, and posing an unnecessary burden on their professionals, this Court, and the District Court. Over the course of several months, Mr. Anderson has filed multiple motions; in December 2025, alone, he filed pleadings in this Court and the District Court, on a weekly basis. Moreover, in January 2026, Mr. Anderson initiated the Adversary Proceeding and noticed the Second Appeal, all while his First Appeal remains unbriefed and he continues to make requests for enlargement of time to file the Appellate Brief. This endless

27

campaign of frivolous motion practice has caused the Plan Administrator and PI Trustee to expend an enormous amount of time and resources in opposing them, at the expense of the estates and other creditors.

**Alternative Sanctions Would Not Be Effective Against Mr. Anderson**

The record of these Chapter 11 Cases conclusively demonstrates that other sanctions are unlikely to adequately protect the courts and parties from Mr. Anderson's continued filing of meritless litigation. The Court's admonishment against filing meritless litigation did not resonate with Mr. Anderson, as he nonetheless commenced the Adversary Proceeding. Given Mr. Anderson's persistence across various courts, and the duplicative nature of his filings, lesser measures will likely be ineffective. *See In re Residential Capital*, 2022 WL 970445, at *6 (holding pre-litigation injunction necessary to spare "other parties and the judicial system the considerable chore of parsing through [litigant's] filings"). There is no indication that Mr. Anderson will stop filing frivolous, vexatious, and meritless pleadings unless and until he is specifically restricted from doing so.

**Mr. Anderson Is Not Shielded By His Pro Se Status**

Mr. Anderson is proceeding *pro se* in these Chapter 11 Cases. Although courts afford *pro se* litigants some latitude, that fact alone will not dissuade the Court from properly issuing a filing injunction. *See In re Koziol*, 669 F. App'x 63, 64 (2d Cir. 2016) (affirming order enjoining *pro se* litigant from filing any pleadings or other document in the district court without permission of the chief judge) (summary order). Filing restrictions against *pro se* litigants have been granted under similar circumstances by bankruptcy courts in this circuit. *See In re Buczek*, 2023 WL 6618901 at *4 (affirming filing injunction because "res judicata barred [*pro se* litigant's] claims and that the claims had been repeated in both bankruptcy and state court"); *In re Moise*, 575 B.R. at 207

28

(enjoining *pro se* litigant from challenging the foreclosure judgment based on his litigious conduct).

**<u>The Court Enjoins Mr. Anderson From Filing Pleadings Without Court Approval</u>**

The Plan Administrator does not seek a blanket prohibition barring Mr. Anderson from filing documents in the Chapter 11 Cases. Rather to ensure that any new filings by Mr. Anderson are non-duplicative and grounded in law and fact, he asks the Court to enjoin Mr. Anderson from making new filings in the Chapter 11 Cases and Adversary Proceeding, without first obtaining leave from the Court to do so. Based on the foregoing analysis of the *Safir* factors, the Court grants that request, to the extent set forth below. In doing so, the Court is mindful that "pre-litigation injunctions generally should be fashioned with a mechanism to allow the enjoined party to seek permission to make subsequent filings." *In re Residential Capital*, 2022 WL 970445, at *6.

On the conditions set forth herein, Mr. Anderson is barred from filing any new pleadings, motions, or other documents in these Chapter 11 Cases, including any new adversary proceedings arising out of or related to these Chapter 11 Cases, without first obtaining leave to file from this Court. The pre-filing injunction does not extend to the Adversary Proceeding. Rather, as explained below, the Court stays prosecution of the Adversary Proceeding pending resolution of the Appeals.

Any motion by Mr. Anderson for leave to file a pleading in these Chapter 11 Cases must be captioned "Application Pursuant to Court Order Seeking Leave to File." Mr. Anderson must attach a copy of his proposed pleading or motion and attach a copy of this Memorandum Decision and Order with each and any such application. To obtain leave to file the pleading, the application must demonstrate that the proposed filing (i) raises issues not previously presented to and decided by this Court, (ii) is not duplicative of prior filings, and (iii) identifies a cognizable legal and factual basis for the relief sought. Should Mr. Anderson violate this Memorandum Decision and Order

29

and file a pleading, motion, or other document without first obtaining leave of the Court to do so, the filing will be stricken for failure to comply with this Order. *See Gertskis v. N.Y. Dep't of Health and Mental Hygiene*, No. 13-2024, 2014 WL 2933149, at *7 (S.D.N.Y. June 27, 2014) (imposing pre-filing injunction requiring litigant to seek leave of court, caption the application accordingly, and attach the proposed complaint and a copy of the court's order); *Simon v. Bank of Am., N.A.*, No. 19-3498, 2021 WL 148650, at *7-8 (E.D.N.Y. Jan. 15, 2021) (affirming bankruptcy court's filing injunction requiring debtor to obtain leave of court before filing any further motions or pleadings related to creditor's interest in the property); *Deep v. Danaher*, 393 B.R. at 54-55 (affirming bankruptcy court's order enjoining party from filing additional pleadings in bankruptcy court without first obtaining leave of court, and noting that the order made clear the recourse available to the enjoined party should he wish to pursue future filings). This injunction does not extend to a timely notice of appeal from this Memorandum Decision and Order, or to documents filed in the District Court.

In the Adversary Proceeding, Mr. Anderson seeks the same remedy he was denied in the Anderson Motions: a judgment that he is not bound by the Plan and Confirmation Order and is entitled to full payment of his Claim. The Complaint merely repackages, under new labels, arguments the Court rejected in the Anderson Motions and that are subject to the Appeals. For instance, in asking to revoke the Confirmation Order for "fraud on the court" under Rule 60(d)(3), Mr. Anderson seeks the same result under section 1144 of the Bankruptcy Code that the Court denied in its Decision on Motion to Modify Plan. Moreover, as in the Anderson Motions, the Complaint seeks relief that, on its face, is barred by the Confirmation Order. For example, in support of the Complaint, Mr. Anderson points to Debtors' alleged "bad faith venue selection," in filing the Chapter 11 Cases in the Southern District of New York, instead of the District of

Delaware. Complt. at 5. However, the Confirmation Order provides that "[v]enue [of the Chapter 11 Cases] is proper before the Bankruptcy Court pursuant to 28 U.S.C.§ 1408." *See* Confirmation Order ¶A. He also challenges the Debtors' eligibility under section 109 of the Bankruptcy Code to seek relief under the Bankruptcy Code. *See* Complt. Art. V A.("Did the Debtors lie about their operational status to manufacture insolvency?"). However, in the Confirmation Order the Court found that "[t]he Debtors were and continue to be qualified to be debtors in chapter 11 cases under sections 109(a) and (d) of the Bankruptcy Code." Confirmation Order ¶ B.

Given the substantial overlap between the matters at issue in the Complaint and Anderson Motions, pursuant to section 105 of the Bankruptcy Code, the Court stays prosecution of the Adversary Proceeding, pending resolution of the Appeals. This order supersedes the Memo Endorsed Order. The Plan Administrator is directed to contact Chambers and schedule a pre-trial conference in the Adversary Proceeding, within thirty-days of entry of the order(s) of the District Court resolving the Appeals.

## CONCLUSION

Based on the foregoing, the Court grants the Motion as set forth herein. The Court denies Mr. Anderson's requests for accommodations under the ADA.

IT IS SO ORDERED.

Dated: March 20, 2026
New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

31